Bonnie Klatt, Petitioner-Appellant, v. Commonwealth Edison Company, a Corporation, and Margaret V. Klatt, Administrator of the Estate of Herbert B. Klatt, Deceased, Respondents-Appellees.

Gen. No. 11,851.

Second District.

December 1, 1964.

Rehearing denied February 18, 1965.

Burrell & Holtan, of Freeport (David M. Burrell, of counsel), and Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for plaintiff-petitioner.

Fearer & Nye, of Oregon, and Hall, Meyer, Fisher, Van Deusen, Holmberg & Snook, of Waukegan (Gerald W. Fearer and Lloyd A. Van Deusen, of counsel), for Commonwealth Edison Co., defendant-respondent. O'Brien, Burnell, Puckett & Barnett, of Aurora (W. C. O'Brien, of counsel), for Margaret V. Klatt, Administrator of the Estate of Herbert B. Klatt, deceased, defendant-third party defendant-appellee-cross-appellant.

ROETH, J.

On August 23, 1961, plaintiff Bonnie Klatt commenced an action against Commonwealth Edison Company, a corporation, hereinafter referred to as "defendant Edison," and Margaret V. Klatt, administrator of the estate of Herbert B. Klatt, deceased, hereinafter referred to as "defendant administrator," to recover damages for personal injuries received in an automobile collision. In her complaint she alleged that at the time of the collision she was a guest passenger in an automobile being driven by Herbert B. Klatt, deceased, her father, who at the time was an agent or servant of defendant Edison. Separate answers were filed by each defendant. The answer of defendant Edison denied that the deceased was its agent at the time of the collision and denied that he was operating the automobile within the course of his employment. In addition defendant Edison filed a third party complaint alleging in substance that the liability, if any, of defendant Edison was predicated upon the doctrine of respondeat superior so that if defendant Edison is liable to plaintiff the defendant administrator is liable to defendant Edison. Issues being joined on these pleadings, the cause was submitted to a jury. The jury returned a verdict in favor of plaintiff and against both defendants and fixed the

damages at $85,000. Thereupon the jury also rendered a verdict on the third party complaint as follows:

"If you find in favor of the defendant, Commonwealth Edison Company, on the complaint of the plaintiff, Bonnie Klatt, you will have no occasion to use this form of verdict; if you find against the defendant, Commonwealth Edison Company on the complaint of the plaintiff, Bonnie Klatt, the Court directs that you will then return the following verdict inserting in the blank space provided the same amount that you have found against Commonwealth Edison Company in favor of Bonnie Klatt if you have so found."

"We the jury find in favor of the third party plaintiff, Commonwealth Edison Company, and against the third party defendant, Margaret V. Klatt, administrator of the estate of Herbert B. Klatt, deceased, and assess the damages of the third party plaintiff, Commonwealth Edison Company, in the amount of $85,000.00."

Judgment was entered upon both of these verdicts. Separate post-trial motions were filed by each defendant for a judgment notwithstanding the verdict and for a new trial. The trial court heard arguments on the motions and filed a rather extensive opinion covering the major points raised by the defendants on their post trial motions. The trial court denied both post trial motions for judgment notwithstanding the verdict but granted both motions for a new trial. The sole ground upon which the motions for new trial were granted, as shown by the court's opinion, was that the trial judge was of the opinion that he had committed error with respect to testimony of one of the witnesses. Upon petition to this court we granted leave to appeal from the order granting a new trial. Thereupon

123

defendant Edison filed a cross appeal appealing from the order granting a new trial on its third party complaint and also appealing from the order denying its motion for judgment notwithstanding the verdict. Defendant administrator also filed a cross-appeal, appealing from the order denying its motion for judgment notwithstanding the verdict.

The issues presented to this court for decision require a rather extensive analysis of the facts in this case. The record in the case discloses that Herbert B. Klatt was employed by defendant Edison as a division field agent working out of the Dixon office with 40 years of service. The territory handled by the Dixon office covers Stephenson County, of which Freeport is the county seat, but does not cover Winnebago County, of which Rockford is the county seat. The work of Herbert B. Klatt consists of traveling about obtaining right of ways, getting permission to trim trees and kindred matters. He was furnished with an automobile by defendant Edison to be used in the performance of his duties. He was pretty much his own boss as to what he did and was given considerable leeway in the manner of performing a particular job. His normal working day ended at 5:00 p. m. and if he was out in the field during the day and finished his work prior to 5:00 p. m. he was expected to return to the office until that time. On the day of the occurrence which was August 26, 1959, Klatt checked out of the Dixon office at about 9:00 a. m. to go to Freeport. On this day defendant Edison had two engineering projects going on in the Freeport area. One was a road improvement project east of Freeport on Route 20 and another was northeast of Freeport near the town of Dakota, all in Stephenson County. The main traveled highway from Dixon to Freeport is a north and south highway known as Illinois 26 and the distance is about 37 miles. Rockford

124

is east of Freeport and the two cities are connected by U. S. Route 20. This distance is about 28 miles. There is also a highway extending southwest along the Rock River from Rockford to Dixon known as Route 2 and it was on this highway that the collision in question took place. The distance from Rockford to Dixon is approximately 41 miles on Route 2.

On the day in question the plaintiff was a student in nurses training at the Rockford Memorial Hospital in Rockford. During the week she stayed in the nurses residence and on days off or vacations she resided with her parents in Dixon. At about 2:15 p. m. Herbert B. Klatt called for his daughter at the dormitory to take her home for a visit. By prearrangement he had agreed to pick her up if he had business in that area. Leaving Rockford they took Route 2 toward Dixon. The collision occurred at about 3:00 p. m. between the city of Oregon and the city of Dixon about two and a half to three miles north of Dixon.

The physical conditions existing at the time of the occurrence are important. The collision occurred on a long sweeping curve. As one proceeds South on Route 2 and enters the curve, the curve is from 1,500 to 1,600 feet long and to a person operating an automobile in a southerly direction the curve curves to the driver's right. The highway around the curve is banked so that the east side of the highway is approximately 1 foot higher than the west side. Along the west side of the curve there had been constructed a gutter which was about 3 feet wide and 6 inches deep and extended all the way around the curve. From the west edge of the highway there was a section of gravel, then a grassy section which sloped into a drainage ditch. The weather conditions were very bad at the time of the occurrence. It was raining very hard, visibility was very poor and cars were using their headlights. Water was flowing on the highway

125

around the curve from east to west and the gutter was filled with water. The car in which plaintiff was driving entered the curve at a speed of from 50 to 55 miles per hour and after it had entered the curve it suddenly partially left the highway so that the two right wheels were on the paved portion of the highway. The car continued in this position for a distance of approximately 1,000 feet without diminishing its speed, and was bouncing up and down quite a bit. Suddenly the car came across the highway to the east side in a diagonal course where it was struck broadside by an oncoming car proceeding north on Route 2. Behind the car which struck the car in which plaintiff was riding was another car being operated by a gentleman known as James Rice, who testified for plaintiff and whose car was also struck as an aftermath of the initial collision. As a result of this collision the plaintiff was very seriously injured and her father subsequently died from the injuries which he received. The plaintiff could not remember anything which occurred after she and her father left Oregon.

At the outset we call attention to the well established rules governing the consideration by this court of a petition for leave to appeal from an order granting a new trial. In Wettaw v. Retail Hardware Mut. Fire Ins. Co., 285 Ill App 394, 2 NE2d 162, 163, the court pertinently observed:

> "That the act (Section 77 of the Civil Practice Act) is designed to promote justice, and to prevent a verdict, warranted by the record and justified by the evidence, from being set aside and lost to the party who was fairly entitled thereto, and such litigant forced to undergo the hazards of another trial with its further incidents of delay and expense, does not admit of argument.

We think it clear that where a party litigant feels aggrieved at the order of a trial court in setting aside a verdict in his favor, and presents to a reviewing court, upon a petition for leave to appeal from such order, grounds which are reasonably debatable and fairly challenge the propriety of the grant of the new trial, the reviewing court should permit the appeal to be taken. Such an interpretation of section 77 is in consonance with justice and in accord with the evident spirit of the act."

In Hall v. Chicago & N. W. Ry. Co., 349 Ill App 175, 110 NE2d 654, the court said:

"Section 77 contemplates that the reviewing court will grant a petition for leave to appeal to determine whether the trial court exceeded or abused its judicial discretion. There should and must be some opportunity afforded litigants to have these issues determined; and if petitions for leave to appeal are to be brushed aside on the ground that the order granting a new trial was within the sound discretion of the court, section 77 would accomplish no practical purpose."

██ In considering the questions presented by this appeal we first consider the matter which was made the basis for the granting of a new trial by the trial judge. A witness by the name of John Groenwald was called as a witness by defendant Edison. Mr. Groenwald was an employee of defendant Edison and on the day in question was operating a company truck. He had come upon the car being operated by Herbert B. Klatt in Oregon, Illinois, where the two cars stopped for a stoplight. Groenwald's truck was right behind Klatt's car at the stoplight. As they proceeded toward Dixon, Groenwald subsequently lost sight

of the Klatt car. Apparently, however, he came upon the scene of the collision just shortly after it had occurred. Upon arriving at the scene he parked his truck in the southbound traffic lane and turned on a red light to halt oncoming traffic. He then proceeded up to the point where the damaged cars were located. From that point north, he examined the shoulder on the west side of the highway. The foregoing was elicited from the witness on direct examination by counsel for defendant Edison. Counsel for defendant administrator then proceeded to cross-examine the witness Groenwald. During this cross-examination the following questions and answers appear in the report of proceedings:

"Q. And did you examine the territory around the accident?

A. I did. I walked around the cars to see where it had been hit. I also looked at the shoulder on the other side of the road to see why he got in that position.

Q. You say the shoulder on the other side of the road. Do you mean the other side of the road from where the automobiles were?

A. Yes, from where I found the cars.

Q. That is the low side of the highway, the inside of the curve?

A. The inside of the curve.

Q. And did you look back towards Oregon or back to the south from where the automobiles were?

Mr. Burrell: Is this north?

Mr. O'Brien: North.

The Witness: Toward Oregon would be northerly.

Mr. O'Brien: Q. Along the waterway?

128

A. Yes, I went back to the waterway to where the culvert goes under, where the spillway goes across the highway quite a ways.

Q. Were there any tire marks or tracks on that side of the park?

Mr. Burrell: I object to that. It has to be connected up.

The Court: Well, first he has to find out if there were. He may answer that much. Were there?

A. No.

The Court: All right.

Mr. O'Brien: Q. Had you parked your truck on the right hand side of the highway, that would be the low side—or, the shoulder rather?

A. After they had came with the ambulances and taken everybody away I pulled my car off of the highway and let the traffic go through; my truck off.

Q. Did you have some kind of a traffic signal on your truck that would stop traffic?

A. I have a red light on my truck.

Q. Yours was the truck there that stopped the other traffic?

A. I had the traffic backed up in their lane all the way around the curve.

Q. When you drove over to the parking on the right-hand side of the road with your truck, did the tracks of your truck show?

A. Yes.

Q. Did they show clearly?

A. Yes.

Mr. Burrell: I object and move to strike it. It is immaterial.

The Court: I presume it is for laying a foundation, I don't know. It may stand.

Mr. O'Brien: Q. Were there any other tracks there on that side of the highway?

Mr. Burrell: I object.

A. Not in that area.

The Court: Just a minute, please. Well, he has answered, 'Not in that area.'

Mr. Burrell: It is immaterial.

The Court: He didn't find any.

Mr. O'Brien: Q. Did you look back to the north, back toward Grand Detour on the parking —or, I should say on the shoulder of the highway? Did you look to see if there were any marks; automobile tracks?

Mr. Burrell: I object.

The Court: Objection sustained, Mr. O'Brien, unless you can first lay the foundation.

Mr. O'Brien: I am trying to prove a negative, of course, I have to ask the gentleman if he looked and if there were any there.

Mr. Burrell: I object to the statement.

The Court: Objection sustained.

Mr. O'Brien: When we are finished with this witness, may I make an offer of proof?"

It should be noted from an examination of the foregoing questions and answers that in substance the witness testified that he proceeded from the automobiles involved in the collision north to a point where he says a culvert goes under the highway. This culvert from other descriptions in the evidence is located at the north end of the curve. Particular attention should be given to his testimony to the effect that there were no tire marks or tracks on the shoulder on the low side of the curve between these two points. It is to be noted that the word "park" is used in one of the questions. It seems to us that it is reasonably

130

clear that what is meant by this word is the shoulder area for parking to the west of the highway. Thus the jury had before it the testimony of this witness that there were in fact no tire marks on the shoulder. On the offer of proof which was made out of the presence of the jury, and which the court refused to permit the jury to hear, the following questions and answers appear in the record:

"Q. Mr. Groenwald, at the time that you drove your truck on to the shoulder on the low side of the curve, did the marks of your truck show clearly in the shoulder?

A. Yes.

Mr. Burrell: I object.

The Court: That was already in, about whether his marks showed, is that correct?

Mr. O'Brien: That is right.

Q. Did you in the course of the investigation examine that shoulder to see if there were marks of any other motor vehicle on that shoulder?

A. Yes, I did.

Q. And did you find out whether or not there were the marks of any other vehicle on that shoulder?

A. I didn't find any.

Q. Can you answer this question; were there any other marks there other than the marks of your truck?

A. I didn't find any.

Q. Did you look?

A. Yes.

Q. Did you look for the specific purpose of determining whether or not there were any other tire marks there?

A. I did.

Mr. O'Brien: I offer that in evidence.

The Court: All right. It was my understanding—

Mr. O'Brien: You understand, your Honor, there has been evidence that this automobile was off the road for one thousand feet, and I think the only way I can combat that by negative evidence is to show a man who at the time looked for them and they weren't there."

It is on the basis of this offer of proof that the trial judge felt that he had committed error in not permitting the jury to hear the testimony covered by the offer of proof. We are of the opinion that in so holding the trial judge failed to distinguish between prejudicial error and harmless error. For all practical purposes the testimony covered by the offer of proof was in fact before the jury as a result of the prior examination which we have detailed by counsel for defendant administrator. At best therefore, the exclusion of the testimony covered by the offer of proof was harmless error. This holding would be decisive of the issue presented by the petition for leave to appeal were it not for the cross appeals of both defendants. We now proceed to examine the contentions of counsel on these cross appeals.

█ Counsel for defendant Edison in urging that the trial court committed error in denying its posttrial motion for judgment notwithstanding the verdict first contends that it is not liable because the transportation of the plaintiff by her father was in violation of a company rule or order. The order which it relies upon is dated June 2, 1941, and is as follows:

"VICE PRESIDENT IN CHARGE OF
OPERATIONS ORDER NO. 23

(Supersedes Order of same number, dated
August 2, 1924)

Copies to:

Officers, Chicago, Illinois
Division Vice Presidents, June 2, 1941
G. O. Department Heads,
Power Supervisors,
Station Superintendents.

### PASSENGERS IN COMPANY VEHICLES

On account of the possible liability on the part of the Company in case of accident, employees driving automobiles, trucks, or other Company vehicles are prohibited from carrying persons other than employees, or other passengers engaged in Company business.

H. Hecht
Vice President"

A copy of this order was found in the desk drawer of the deceased, Herbert B. Klatt, at the company office in Dixon. There is no merit in this contention. In Lake Shore & M. S. R. Co. v. Brown, 123 Ill 162, 14 NE 197, it was held that rules and regulations of a corporation prescribing duties and powers of its employees can not affect persons having no notice of them. There is nothing in the record to indicate that Herbert B. Klatt read the rule or that plaintiff had any knowledge of it.

██ It is next contended by defendant Edison that the deviation of Herbert B. Klatt in picking up his

daughter at Rockford constituted abandonment of his employment and that therefore he was not operating the automobile in the course of his employment at the time of the occurrence in question. There is an exhaustive annotation on this question in 51 ALR2d 10. An examination of this annotation will reveal that the authorities are not in agreement on what constitutes a deviation. There are many variations of the deviation rule. However, in Parotto v. Standard Paving Co., 345 Ill App 486, 104 NE2d 102, there is a full and lengthy analysis of the rule in Illinois. If we apply this case to the factual situation existing in the case at bar the contention of defendant Edison cannot be sustained. In this connection it is worthy of note that defendant Edison had a project some 8 miles east of Freeport. Assuming that the deceased was working on this project and intending to return to Dixon he would have a choice of routes since the highways from Dixon to Freeport, to Rockford and back to Dixon form a triangle. It is, of course, true that if he chose the route through Rockford the distance required to return to Dixon would be somewhat longer. However, the collision occurred when he was within 3 miles of Dixon with two hours of time still left in his working day. There can be no question under the record before us that he was in fact returning to Dixon to the division office of defendant Edison. Consequently it can be said that if there had been a slight deviation, he had returned to the course of his employment.

██ ██ It is next contended that the evidence does not show that the plaintiff was free from wilful and wanton misconduct and that Herbert B. Klatt was guilty of wilful and wanton conduct. We are of the opinion that under the recent decisions of the Supreme Court of this state in Amenda v. Suits, 8 Ill2d

598, 134 NE2d 811, and Myers v. Krajefska, 8 Ill2d 822, 134 NE2d 277, these two questions were questions of fact for the jury. As has often been observed, it is the exceptional case wherein it can be said that the question of wilful and wanton misconduct on the part of the driver or the contributory wilful and wanton misconduct on the part of the guest is not a question of fact for the jury.

■ Defendant Edison also contends that the court erred in permitting the witness Paul Borschenius to be called as an adverse witness under Section 60 in rebuttal. The abstract of record before us does not show any objection being made at the time he was so called. Consequently this question is not preserved for review.

Defendant Edison also complains of the giving of certain of plaintiff's instructions and refusing of one of its instructions. We have carefully examined the instructions that were given and are of the opinion that the jury was adequately and correctly instructed in this case.

Accordingly we are of the opinion that the trial court properly denied the motion of defendant Edison for judgment notwithstanding the verdict.

■ Counsel for defendant administrator makes many of the same contentions that are made by defendant Edison. What we have already said about the contentions of defendant Edison apply likewise to defendant administrator. There is one additional contention made by defendant administrator that requires consideration. The third party complaint filed by defendant Edison against defendant administrator was filed more than two years after the occurrence in question but within a five-year period. It is contended that the two-year statute of limitations applies and that the third party complaint is therefore barred.

135

The rules in this regard are contained in 21 ILP Indemnity, Sections 9 and 10. In Section 10 it is said:

> "One who without fault has been compelled to pay damages because of the wrong-doing of another primarily liable is entitled under an implied contract of indemnity to recover expenditures properly made in the discharge of such liability."

In Section 9 it is said:

> "The obligation to indemnify does not ripen into a cause of action until the happening of the thing to be indemnified against. Where the contract is one strictly of indemnity against loss or damage, the indemnitee cannot recover until he has made payment or in some way suffered actual loss or damage of the character against which the covenant runs."

While ordinarily the indemnitee would not have a cause of action until he had paid a claim the modern rules of the Civil Practice Act now permit the filing of a third party complaint such as was filed in this cause on the basis of possible liability.

Accordingly, the judgment of the trial court denying the post trial motions of the defendants is affirmed. The judgment of the trial court granting the motions of the defendants for a new trial is reversed and the cause is remanded with directions to reinstate or restore both judgments.

Affirmed in part, reversed and remanded in part with directions.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.

Having reconsidered the briefs and having studied the petitions for rehearing in this cause, we have decided to adhere to our opinion.

In paragraph 4 of our original opinion, the sentence which reads:

> "The car in which plaintiff was driving entered the curve at a speed of from 50 to 55 miles per hour and after it had entered the curve it suddenly partially left the highway so that the two right wheels were on the paved portion of the highway."

is modified to read:

> "The car in which plaintiff was driving entered the curve at a speed of from 50 to 55 miles per hour and after it had entered the curve it suddenly partially left the highway so that the two right wheels were off the paved portion of the highway."

In the petition for rehearing filed by defendant-administrator, it is contended that this court's remanding order in its present form directs the trial court to enter two separate judgments against the defendant-administrator, one in favor of defendant Edison in the amount of $85,000, and one in favor of the plaintiff in the amount of $85,000. It is contended that in view of this court's mandate, the trial court is powerless to grant the defendant-administrator any relief against her liability on both judgments. A master not guilty of active participation in a tort may recover against his servant the amount which the

master is required to pay for damages to a third person by reason of the servant's tort. The ground of responsibility is solely that of respondeat superior. Defendant Edison, if required to pay the judgment recovered by the plaintiff, is entitled to recover, to the extent of any payment, on its judgment against the defendant-administrator. Such a cause of action is a cause of action for indemnity. Since defendant Edison may have further rights to the extent of its payment on the judgment of plaintiff herein affirmed, the original remanding order to the trial court is further supplemented to authorize the trial court to enter such further orders as justice may require under circumstances arising out of any payment of the judgment in favor of the plaintiff.