THOMAS PIERRE GROTHE, BY MAURICE GROTHE,
HIS GUARDIAN AD LITEM, AND ANOTHER v.
TERRY ALLEN SHAFFER AND ANOTHER.
BRUCE LAVERNE JOHNSON AND ANOTHER,
THIRD-PARTY DEFENDANTS.

232 N. W. 2d 227.

July 25, 1975—No. 44990.

18

*Richards, Montgomery, Cobb & Bassford,* and *Jack A. Rosberg,* for appellants.

*Coulter, Nelson & Sullivan,* and *Lyle Frevert,* for respondents Grothe.

*Marino, Becker & Granquist* and *Jeremy Lane,* Legal Aid Society, Inc., for respondents Johnson.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

This is a personal injury action arising out of an automobile-motorcycle accident. Defendants appeal from a judgment for plaintiffs. We affirm in part and reverse in part.

The accident occurred on September 6, 1966, at the intersection of 90th Street and Penn Avenue South in Bloomington, Minnesota. Thomas P. Grothe, who was then 17 years old, was a passenger on a motorcycle owned by Zelda G. Johnson and driven by her son, Bruce L. Johnson. The motorcycle collided with a car being driven by defendant Susan Shaffer and owned by Terry Allen Shaffer. Among other things, Thomas Grothe suffered a broken leg, a blow to the head, and injuries to several teeth. It is also claimed that Thomas suffered a cerebral concussion causing a permanent sensory epileptic disorder to his brain.

Thomas' father, plaintiff Maurice Grothe, commenced this action, as guardian ad litem for Thomas, against defendants Terry and Susan Shaffer on October 21, 1966. On January 17, 1973, the trial court granted plaintiff permission to serve a second amended complaint which added Maurice Grothe, individually,

as a plaintiff with a claim against defendants for loss of services and earnings of Thomas Grothe during his minority and for medical, hospital, and dental expenses incurred by Maurice Grothe on behalf of Thomas.

On April 14, 1973, defendants served a third-party complaint against Zelda G. Johnson and Bruce Johnson, third-party defendants. On October 9, 1973, the trial court granted the third-party defendants' motion for summary judgment on the ground that the third-party action was barred by the statute of limitations. The trial court, however, refused to allow defendants to amend their answer to assert the defense that the statute of limitations barred plaintiff Maurice Grothe's claim as an individual against defendants.

After trial, the jury returned a verdict for plaintiffs in the sum of $66,000. Judgment was entered accordingly and defendants appeal.

Defendants argue three issues on appeal:

(1) Are the damages awarded by the jury supported by the evidence? (2) Did the trial court properly grant plaintiff permission to amend his complaint to add an additional plaintiff after the statute of limitations had run? (3) Did the trial court properly grant summary judgment in favor of third-party defendants on the basis that the third-party action was barred by the statute of limitations?

■ Defendants' argument that the damages awarded by the jury are unsupported by the evidence is based on their assertion that there is insufficient evidence that Thomas Grothe suffered permanent brain damage as a result of the accident. Defendants contend that the brain damage was established largely through subjective evidence and that any brain damage which might exist could well have been caused by blows to the head which, the record showed, Thomas had received in other incidents. However, our review of the record reveals substantial evidence, in addition to Thomas' own testimony of headaches and numbness over his scalp, from which the jury could conclude that he did in fact suf-

fer brain damage and that the damage was caused by this accident.

Dr. Francis S. Wright, a specialist in neurology and pediatrics and an associate professor in the Department of Neurology and Pediatrics at the University of Minnesota, testified on behalf of plaintiffs. Dr. Wright, to whom Thomas was referred by his regular physician after the results of an electroencephalogram showed a convulsive disorder of a sensory type, first saw Thomas on December 9, 1966. At Dr. Wright's direction, several subsequent EEG's were administered to Thomas over a period of several years.

Based upon his observations, and upon the results of the EEG's, Dr. Wright testified that:

"* * * [T]he history of the brain concussion with the sensations which are characteristics for seizure disorders in general coupled with the very abnormal electroencephalograms led me to the conclusion that [Thomas] had a convulsive disorder, an epileptic disorder of a sensory type."

Dr. Wright further testified that the brain injury resulted from the accident of September 1966 and that the condition was permanent. He testified that "it remains abnormal and it seems to me the process is fixed, it's going to stay there. We're talking about a period of time that's in reference to five years, so that abnormality is going to stay."

Also, according to Dr. Wright, Thomas will have to be on medication for the rest of his life and will need periodic neurological examinations, "upwards to three examinations a year." On cross-examination, Dr. Wright testified that the abnormal EEG's were objective evidence of Thomas' brain disorder.

Further evidence of future damages was supplied by an employment expert who testified that Thomas would experience a loss of earnings of $200 to $250 per month as a result of his injuries and that, as he grew older, the monthly loss would increase. In addition, there was competent medical testimony that

Thomas had a 10-percent permanent partial disability to his left leg as a result of the accident.

Defendants moved for a new trial because the damages awarded by the jury were excessive and not justified by the evidence. That motion was denied by the trial court. We have frequently held that the question of whether a verdict is justified by the evidence is generally for the trial court's discretion. Cameron v. Evans, 241 Minn. 200, 62 N. W. 2d 793 (1954). Our review of the evidence in this case, including the injuries sustained and the permanency of the injuries, the future loss of earning capacity, and past and future medical expenses, does not persuade us that the trial court abused his discretion in refusing to grant a new trial because of an alleged excessive verdict.

■ Plaintiff, with leave of the trial court, amended his complaint to add Maurice Grothe as an additional plaintiff to make a claim individually against defendants for the loss of his son's earnings and services and for medical and dental expenses. Defendants claim that this amendment was made after the running of the statute of limitations and is therefore barred. There is no question that the amendment occurred more than 6 years after the date of the accident. Plaintiff amended his complaint by leave of the court pursuant to Rule 15.01, Rules of Civil Procedure,[1] and the issue is whether the amendment relates back to the date

---

[1] Rule 15.01, Rules of Civil Procedure, provides: "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders."

of the original proceeding. See, Rule 15.03, Rules of Civil Procedure.[2]

Rule 15.03, insofar as it is relevant, is identical to Rule 15(c), Federal Rules of Civil Procedure. The Federal courts generally consider three factors to determine whether an amendment adding a new plaintiff should relate back to the date of the original proceeding. They are: (a) Whether the defendant has received adequate notice of the claim against him, e.g., Crowder v. Gordons Transports, Inc. 387 F. 2d 413 (8 Cir. 1967); (b) whether the relation back would unfairly prejudice the defendant, e.g., Mattson v. Cuyuna Ore Co. 24 F. R. D. 363 (D. Minn. 1959); and (c) some courts have inquired as to whether there was an identity of interest between the original plaintiff and the plaintiff sought to be added, e.g., Longbottom v. Swaby, 397 F. 2d 45 (5 Cir. 1968).

In Williams v. United States, 405 F. 2d 234, 12 A. L. R. Fed. 224 (5 Cir. 1968), the court held that an amended complaint, adding the mother of an injured minor as an individual plaintiff, related back to her original complaint which she had filed as next friend of her minor child and was not barred by the statute of limitations. In reaching that conclusion, the Williams court observed (405 F. 2d 239, 12 A. L. R. Fed. 231):

"* * * [T]he occurrence as an operational set of facts was stated fully (and subsequently proved). Next, the complaint,

---

[2] Rule 15.03, Rules of Civil Procedure, provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

read with required liberality, * * * clearly revealed the existence of (a) a minor (b) the mother as parent and (c) the assertion by her of a claim. Since liability to the minor would give rise to a liability to the parent under local law, and since the circumstances of these individuals was such as would reasonably indicate a likelihood that the parent would incur losses of a recoverable kind, the Government was put on notice that the parent's claim was also involved.

"Once that conclusion is reached the Government has suffered no prejudice."

See, also, Newman v. Freeman, 262 F. Supp. 106 (D. Pa. 1966) (father's claim for medical expenses and loss of services added to minor's claim for injuries) ; Hockett v. American Airlines Inc. 357 F. Supp. 1343 (D. Ill. 1973) (wife's claim for damages for loss of consortium added to husband's claim for personal injuries).

We have concluded that the trial court correctly granted plaintiff leave to amend the complaint and that the statute of limitations is not a bar to the father's action as an individual. Defendants had adequate notice of the father's claim against them; they have not been unfairly prejudiced by the claim; and there is an identity of interest between the original and the added plaintiff.

■ Defendants allege that the trial court erred in granting summary judgment in favor of third-party defendants. The trial court's determination was based upon its conclusion that the action was barred by the statute of limitations. The question before us, then, is as follows: At what point in time does the statute of limitations begin to run on the claim of one joint tortfeasor against another for contribution?

The right of contribution arises when there is common liability of two or more joint tortfeasors and one joint tortfeasor has paid more than his share of the common obligation. Radmacher v. Cardinal, 264 Minn. 72, 117 N. W. 2d 738 (1962). A claim for contribution does not accrue or mature until the person

entitled to the contribution has sustained damage by paying more than his fair share of the joint obligation. Gustafson v. Johnson, 235 Minn. 358, 51 N. W. 2d 108 (1952). Thus, the statute of limitations does not begin to run on the claim of one joint tort-feasor for contribution from another joint tortfeasor until one of the joint tortfeasors had paid more than his fair share of the damage. State Farm Mutual Auto. Ins. Co. v. Schara, 56 Wis. 2d 262, 201 N. W. 2d 758, 57 A. L. R. 3d 922 (1972). This conclusion as to the point of time at which the statute of limitations begins to run in actions for contribution has been reached by virtually every jurisdiction which has considered the question.[3]

Third-party defendants argue that this rule should be reconsidered in light of Rule 14, Rules of Civil Procedure. Under Rule

---

[3] E.g., De La Forest v. Yandle, 171 Cal. App. 2d 59, 340 P. 2d 52 (1959); McEvoy v. City of Waterbury, 92 Conn. 664, 104 A. 164 (1918); Klatt v. Commonwealth Edison Co. 55 Ill. App. 2d 120, 204 N. E. 2d 319 (1964), rev'd on other grounds, 33 Ill. 2d 481, 211 N. E. 2d 720 (1965); City of Louisville v. O'Donaghue, 157 Ky. 243, 162 S. W. 1110 (1914); Appalachian Corp. v. Brooklyn Cooperage Co. 151 La. 41, 91 So. 539 (1922); Veazie v. Penobscot R. Co. 49 Maine 119 (1860); City of Springfield v. Clement, 205 Mo. App. 114, 225 S. W. 120 (1920), rev'd on other grounds, 296 Mo. 150, 246 S. W. 175 (1922); City of Lincoln v. First Nat. Bank of Lincoln, 67 Neb. 401, 93 N. W. 698 (1903); Adler's Quality Bakery, Inc. v. Gaseteria Inc. 32 N. J. 55, 159 A. 2d 97 (1960); Clements v. Rockefeller, 189 Misc. 889, 76 N.Y.S. 2d 493 (Sup. Ct. 1947); Ashley Borough v. Lehigh & Wilkes-Barre Coal Co. 232 Pa. 425, 81 A. 442 (1911); City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518 (1904); Culmer v. Wilson, 13 Utah 129, 44 P. 833 (1896); City of Seattle v. N. P. Ry. Co. 47 Wash. 552, 92 P. 411 (1907); Northwest Airlines v. Glenn L. Martin Co. 161 F. Supp. 452 (D. Md. 1958); Mims Crane Service, Inc. v. Insley Mfg. Corp. 226 So. 2d 836 (Fla. App.), certiorari denied, 234 So. 2d 122 (Fla. 1969); McGlone v. Corbi, 59 N. J. 86, 279 A. 2d 812 (1971); Hager v. Brewer Equipment Co. 17 N. C. App. 489, 195 S. E. 2d 54 (1973); State Farm Mutual Auto. Ins. Co. v. Schara, 56 Wis. 2d 262, 201 N. W. 2d 758, 57 A. L. R. 3d 922 (1972); Bair v. Bryant, 96 A. 2d 508 (D. C. Ct. App. 1953); Wnek v. Boyle, 172 Pa. Super. 222, 92 A. 2d 701 (1952); Roehrig v. City of Louisville, 454 S. W. 2d 703 (Ky. 1970); Simon v. Kansas City Rug Co. 460 S. W. 2d 596 (Mo. 1970); Annotation, 20 A. L. R. 2d 925.

14, it is not necessary to wait until after liability has been fixed to bring an action for contribution. Rule 14 provides that the issue of contribution may be litigated by a third-party complaint in the original action. Third-party defendants argue that under this rule the cause of action for contribution accrues when the original action is commenced. We do not agree. While it is true that Rule 14 allows a defendant to bring in a party who is or may be liable to him for all or part of the plaintiff's claim, this rule merely permits joinder; it does not necessarily create a substantive right to implead another party. In Koenigs v. Travis, 246 Minn. 466, 469, 75 N. W. 2d 478, 481 (1956), we declared:

" * * * The purpose of [Rule 14.01] is to permit the defendant to assert an independent claim against such third party which he otherwise would assert in another action, thus preventing a multiplicity of suits. This is a rule of procedure and does not create any substantive right. Neither does it abridge, enlarge, or modify the substantive rights of any litigant."

The decision to permit the third-party complaint rests in the sound discretion of the trial court. Koenigs v. Travis, *supra*; and, in fact, the trial court's decision to deny defendants leave to file a third-party complaint is not immediately appealable to this court and can only be raised on appeal from the entry of judgment on the original action. Hunt v. Nevada State Bank, 285 Minn. 77, 172 N. W. 292 (1969), certiorari denied, sub. nom. Burke v. Hunt, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970); Chapman v. Dorsey, 230 Minn. 279, 41 N. W. 2d 438 (1950). The third-party claim is thus contingent on the outcome of the original action and upon the payment by one joint tortfeasor of more than his fair share of the common obligation. 1 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 508. When a right is dependent on a contigency, the cause of action accrues and the statute begins to run on the date of the happening of the contingency. Bachertz v. Hayes-Lucas Lumber Co. 201 Minn. 171, 275 N. W. 694 (1937). An action for contribution

remains contingent until that time when the obligation of one joint tortfeasor is fixed, and that does not occur until the joint tortfeasor has paid more than his fair share of the damage.

Since the third-party action was commenced before the statute of limitations had begun to run on defendants' claim for contribution, it was error for the trial court to have granted third-party defendants' motion for summary judgment.

Affirmed in part and reversed in part.