**Frances ORTIZ, as next of kin and guardian of the heirs of Israel Ortiz, deceased, Respondent,**

v.

**Bryan Lee GAVENDA, et al., pet., Appellants.**

**No. C5–97–1427.**

Supreme Court of Minnesota.

March 18, 1999.

---

Stitch, Angell, Kreidler, Brownson & Ballou, P.A., D. Scott Ballou, Leo I. Brisbois, Minneapolis, for appellants.

Sawicki, Neese & Phelps, P.A., Paul J. Phelps, Woodbury, for respondent.

## OPINION

STRINGER, Justice.

We granted review to determine whether the amendment and relation back principles generally applicable to pleadings under the Minnesota Rules of Civil Procedure apply to a wrongful death claim brought under Minn. Stat. ch. 573 (1998). The trial court concluded that the statutory time limit of three years for bringing the action in the name of the trustee in Minn.Stat. § 573.02 (1998) was a condition precedent to maintaining a wrongful death action and therefore the consequences of failing to bring the action as required by the statute could not be circumvented by application of the amendment and relation back rules. The court of appeals reversed. We reverse the court of appeals and reinstate the ruling of the trial court.

Israel Ortiz was severely injured on September 24, 1993 when the motorcycle he was driving collided with a truck driven by Bryan Gavenda and owned by Gavenda's employer, Frito Lay, Inc. Israel Ortiz died from those injuries on December 11, 1993. On June 6, 1995 his widow, Frances Ortiz (Ortiz), served a complaint on Gavenda and Frito Lay (collectively Gavenda) asserting a wrongful death claim and seeking damages as the "Trustee for the heirs of Israel Ortiz." Gavenda's answer to the complaint denied liability and alleged that Ortiz's claim "failed to comply with the provisions of Chapter 573 of

Minnesota Statutes"—the chapter governing wrongful death actions.

On November 15, 1995 Ortiz signed a petition to have herself appointed trustee for the next of kin of her deceased husband as required by Minn.Stat. § 573.02, subd. 3 (1998). Although the petition and an accompanying Consent and Oath form were properly signed and duly notarized, a legal assistant for Ortiz's attorney inadvertently failed to submit the documents to the court and, as a consequence, Ortiz was not appointed trustee. The mistake went unnoticed when Ortiz's complaint was filed with the Anoka County District Court on December 6, 1995.

The oversight came to light and Ortiz filed her petition to be appointed trustee on January 8, 1997, but by then more than three years had elapsed since her husband's death. The trial court appointed Ortiz trustee on January 16, 1997 and Ortiz then moved to amend her complaint to reflect the appointment arguing that the amended complaint should relate back to the date of her original complaint. Gavenda acknowledged that no prejudice would be suffered from the requested amendment, but argued that the statute of limitations in Minn.Stat. § 573.02, subd. 1 was jurisdictional and could not be waived for equitable reasons. Gavenda moved to dismiss arguing (1) that Minn.Stat. § 573.02, subd. 1, required Ortiz to bring the suit as trustee for her deceased husband's next of kin within three years of his death and (2) that because Ortiz was not appointed trustee within this time period, she lacked standing to bring the action and the trial court lacked jurisdiction to hear her claim.

The trial court denied Ortiz's motion to amend and granted Gavenda's motion to dismiss. The court concluded that "because Plaintiff had not been duly appointed trustee by the court within three years of decedent's death for prosecution of the *Complaint,* this action is barred pursuant to a § 573.02 subd. 1 statute of limitations, particularly in light of *Regie de l'assurance du Quebec v. Jensen,* 399 N.W.2d 85 (Minn.1987)." (emphasis in original).

On review, the court of appeals reversed and remanded the case for trial, concluding that Gavenda would suffer no prejudice by

reason of amending the complaint and, as the duly appointed trustee, Ortiz was the real party in interest in any wrongful death action arising out of her husband's death. *Ortiz v. Gavenda,* 574 N.W.2d 764, 766–69 (Minn. App.1998). The court rejected Gavenda's assertion that the time limit in Minn.Stat. § 573.02, subd. 1 was an absolute jurisdictional bar as calling for "too technical an application of the [statute's] limitations period" and held that Ortiz's amended complaint could relate back to the date of filing of her original complaint. *Id.* at 766, 769.

■ On appeal to this court Gavenda argues that compliance with the 3–year time limit of Minn.Stat. § 573.02 is an absolute condition precedent to bringing a wrongful death action and that because Ortiz was never appointed trustee, no wrongful death claim was commenced within the statutory time period. Therefore the trial court lacked jurisdiction to hear her suit.

■ A wrongful death claim is purely statutory, as common law recognized no such actions on the theory that a claim for personal injuries died with the victim. *See Fussner v. Andert,* 261 Minn. 347, 350–53, 113 N.W.2d 355, 357–58 (1961); *Cashman v. Hedberg,* 215 Minn. 463, 466, 10 N.W.2d 388, 390 (1943). In Minnesota, actions for wrongful death are prohibited by Minn.Stat. § 573.01 except as provided for in Minn.Stat. § 573.02:

> Subdivision 1.  When death is caused by the wrongful act or omission of any person or corporation, *the trustee appointed as provided in subdivision 3 may maintain an action* therefor if the decedent might have maintained an action, had the decedent lived * * *. *[An] action under this section may be commenced within three years after the date of death* provided that the action must be commenced within six years after the act or omission.  The recovery in the action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and shall be for the exclusive benefit of the surviving spouse and next of kin * * *.

> If an action for the injury was commenced by the decedent and not finally determined

while living, it may be continued by the trustee * * *.

* * * *

Subdivision 3. Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction of an action falling within the provisions of subdivisions 1 or 2, shall appoint a suitable and competent person as trustee to commence or continue such action and obtain recovery of damages therein.

Minn.Stat. § 573.02 (1998) (emphasis added).

Ortiz concedes that she did not bring her wrongful death action as the duly-appointed trustee for her husband's next of kin within three years of his death, but argues that she should be allowed to amend her complaint to reflect her current capacity as the now duly-appointed trustee and that, based on the provisions of Minn. R. Civ. P. 15.03 and 17.01, her amendment should relate back to the date of her original complaint. Rule 15.03 provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Rule 17.01 requires that "[e]very action shall be prosecuted in the name of the real party in interest." Rule 17.01 further states:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

In common law claims we have applied these rules to permit untimely amendments to relate back to the date of the original complaint so long as the defendants had adequate notice of the new claim and would not be unfairly prejudiced by the amendment. *See Grothe v. Shaffer*, 305 Minn. 17, 22–23, 232

N.W.2d 227, 231 (1975) (affirming the trial court's use of Rule 15.03 to permit relation back of an untimely amendment adding a plaintiff).

We begin our analysis with the observation that the limitation provisions in a statutorily created cause of action are jurisdictional, requiring dismissal for failure to comply—they do not have flexible parameters permitting them to be ignored if their application is "too technical," as the court of appeals held. Over one hundred years ago we held that because the wrongful death statute itself made no exceptions to the time limit for bringing a wrongful death action, no exceptions could be made by construction. *See Rugland v. Anderson*, 30 Minn. 386, 15 N.W. 676 (1883). Since *Rugland*, we have consistently reaffirmed the importance of filing a wrongful death action within the time fixed by Minn.Stat. § 573.02:

This period fixing the time within which the right of action for wrongful death may be exercised is not an ordinary statute of limitations. It is considered a condition precedent to the right to maintain the action, and the lapse of such period is an absolute bar. It conditions the right.

*Berghuis v. Korthuis*, 228 Minn. 534, 536, 37 N.W.2d 809, 810 (1949); *see also Bonhiver v. Fugelso, Porter, Simich and Whiteman, Inc.*, 355 N.W.2d, 138, 141 (Minn.1984); *Cashman*, 215 Minn. at 469, 10 N.W.2d at 391–92. Similarly, in *Bonhiver*, we emphasized the high standard of strict compliance with the statute: "Because the right to maintain an action for wrongful death is created by statute and is in derogation of the common law, the requirements of the statute have generally been strictly construed." 355 N.W.2d at 141. Moreover, as a general rule, mere mistake does not toll a statute of limitations. *See Sollar v. Oliver Iron Mining Co.*, 237 Minn. 170, 175, 54 N.W.2d 114, 117 (1952).[1]

Strict compliance with § 573.02 is the underpinning of our decision in *Regie de l'assurance Auto. du Quebec v. Jensen*, 399 N.W.2d 85 (Minn.1987), where we held that because appointment of a trustee was a con-

---

1. Circumstances may be different where a defendant has fraudulently concealed the existence of a course of action. *See DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 52 (Minn.1982).

dition precedent to bringing a wrongful death action under Minn.Stat. § 573.02, an action filed without it was a "legal nullity." In *Regie* an insurance company (the Regie) had filed an equitable subrogation action in its own name to recover from the appellant certain payments it had made to the surviving spouse of a Minnesota woman killed when riding in a car struck by the appellant's truck. *Id.* at 86. Although the Regie's original equitable subrogation action was commenced within three years of the decedent's death, the Regie had brought the action in its own name rather than as trustee as required by Minn.Stat. § 573.02. *Id.* at 87. The trial court ruled that because the Regie's claim for damages resulting from the death of its insured was governed by Minn.Stat. § 573.02, the Regie lacked capacity to bring the suit in its own name. *Id.* Relying on Minn. R. Civ. P. 17.01, the court allowed the Regie a reasonable time to petition to become the appointed trustee and permitted the suit to continue even though more than three years had passed since the decedent's death. *Id.* We reversed on appeal, holding that the relation back doctrine was inapplicable because when the Regie initially brought suit in its own name rather than as trustee for the decedent's next of kin, the suit was a "legal nullity"—therefore "nothing existed to which the attempted amendment, now brought in the name of the Regie as trustee, could 're-late back.'" *Id.* at 92.

Ortiz argues that *Regie* should be distinguished on equitable grounds of lack of prejudice, but no matter how compelling the circumstances for equitable intervention, equity cannot breathe life into a claim that has never been anything more than a "nullity." The court of appeals' effort to distinguish

*Regie* on the basis of its origins in subrogation is equally without substance because the nature of the clam is immaterial where the original filing has no legal effect. *See Regie*, 399 N.W.2d at 92; *see also Shumway v. Nelson*, 259 Minn. 319, 323–24, 107 N.W.2d 531, 534 (1961) (rejecting an assertion that the decedent's sole beneficiary rather than the trustee was the real party in interest in a wrongful death action).

We reaffirmed *Regie's* holding in *In re Gilliard*, No. C2–91–1811, 1992 WL 121622 (Minn.1992), where we again ruled that "Minn.Stat. § 573.02, subd. 3 (1990) requires the *appointment* of a trustee prior to the expiration of the 3–year statute of limitations, not the mere filing of a petition therefor within the statutory period." *Id.* at *1 (emphasis in original).[2] We observe that in the 11 years since *Regie*, and indeed in the hundred-plus years since *Rugland*, the legislature has never indicated dissatisfaction with our consistent interpretation of Minn. Stat. § 573.02's time limit as a strict condition precedent to maintaining a wrongful death action.

Finally, our emphasis on historical precedent should not obscure the sound legal and policy reasons for requiring the commencement of a wrongful death action by a court-appointed trustee. Rule 144 of our General Rules of Practice provides a comprehensive framework for the appointment of a trustee to bring a wrongful death action under Minn.Stat. § 573.02 and to protect the interests of those entitled to share in a monetary recovery. The trustee should not have interests conflicting with those entitled to a recovery, *see Bachman v. Lieser*, 289 Minn. 298, 299–300 n. 1, 184 N.W.2d 11, 13 n. 1

2. The dissent acknowledges that this court's rulings in *Regie* and *Gilliard* cannot be distinguished, but argues that despite the doctrine of *stare decisis*, in the interests of justice they should be overruled. Reference to Mr. Justice Harry Blackmun's quote in *Flood v. Kuhn*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), from a dissent of Mr. Justice Felix Frankfurter seems particularly appropriate:

The Court decided as it did in the *Toolson [v. New York Yankees Inc.*, 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953)] case as an application of the doctrine of *stare decisis*. That doctrine

is not, to be sure, an imprisonment of reason. But neither is it a whimsy. * * * If *stare decisis* be one aspect of law, as it is, to disregard it in identic situations is mere caprice. *Id.* at 277, 92 S.Ct. 2099 (quoting *United States v. International Boxing Club*, 348 U.S. 236, 249–50, 75 S.Ct. 259, 99 L.Ed. 290 (1955) (Frankfurter, J., dissenting)). Ortiz's failure to comply with the clear dictate of the wrongful death statute is indeed regrettable, but to overrule over one hundred years of jurisprudence in order to provide relief for the unfortunate consequences of failing to file the petition for trustee appointment is surely "mere caprice."

(1971), and *Minners v. State Farm Mut. Auto. Ins. Co.*, 284 Minn. 343, 344 n. 2 170 N.W.2d 223, 224 n. 2 (1969), and should be removed if not acting in the best interests of the heirs and next of kin. *See In re Wrongful Death of Carlson*, 427 N.W.2d 752, 754–55 (Minn.App.1988). The appointment of a trustee under Minn.Stat. § 573.02 is an exercise of the fundamental legal principle that those entitled to recovery as a result of the wrongful death shall be represented by the trustee without compromise.

The court of appeals is reversed.

PAUL H. ANDERSON, J. (dissenting).

I respectfully dissent. I agree with the majority's conclusion that our holdings in *Regie de l'assurance Auto. du Quebec v. Jensen*, 399 N.W.2d 85 (Minn.1987), and *In re Gilliard*, No. C2–91–1811, 1992 WL 121622 (Minn. May 15, 1992), stand in the way of granting Ortiz the relief she seeks. Accordingly, I do not, as the court of appeals did, believe *Regie* and *Gilliard* can be sufficiently distinguished from the present case to avoid a conflict in our case law should we hold that Ortiz is free to proceed with her amended claim. However, I do agree with the result reached by the court of appeals.

As a lower appellate court, the court of appeals is bound to follow our court's precedents, even when the court of appeals regards those precedents as violative of fairness and justice and at variance with legislative intent. Here, the court of appeals knew it was bound by the precedent established in *Regie* and followed in *Gilliard*, but still in good faith concluded that this precedent was wrong when applied to the facts of this case. Therefore, the court of appeals took the only avenue open to it and strove to distinguish those cases. The court of appeals' effort was doomed to failure—as the majority points out, *Regie* and *Gilliard* simply cannot be distinguished from the present case. However, as a member of our state's highest court, I am in a position to advocate directly that which the court of appeals was without authority to change. Accordingly, I conclude that *Regie* and *Gilliard*, insofar as their holdings would preclude application of the

relation back doctrine to claims brought under Minn.Stat. § 573.02—the Wrongful Death Act—should be overruled.

I do not reach this conclusion lightly. The doctrine of *stare decisis* ensures stability in our law by advocating adherence to decided case law. *See In re Gardner's Trust*, 266 Minn. 127, 134, 123 N.W.2d 69, 74 (1963). I agree with this doctrine and do not suggest that we should, without justification, overturn the learning, wisdom, and experience of the past, especially when we have recently spoken on an issue. Further, I recognize that a change in the law should not be based upon a change in the membership of the court because "[a] basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the Government." *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 636, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (Stewart, J., dissenting). My belief in these precepts and my desire to honor them cause me to come to my conclusion in this case with great reluctance.

But the doctrine of *stare decisis* "is not an inflexible *rule* of law but rather a *policy* of the law." *Toetschinger v. Ihnot*, 312 Minn. 59, 83, 250 N.W.2d 204, 217 (1977) (Yetka, J., dissenting) (citing *Johnson v. Chicago, B. & Q. R.R. Co.*, 243 Minn. 58, 68, 66 N.W.2d 763, 770 (1954)). On the topic, Mr. Justice Benjamin Cardozo once wrote:

> [W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. * * * "Change of this character should not be left to the legislature." If judges have wofully [sic] misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors.

Benjamin N. Cardozo, *The Nature of the Judicial Process*, 150–152 (1921) (internal citation omitted). *Stare decisis* should not require us to be bound by an unsound principle. In the words of an early decision of the California Supreme Court, "*the mere fact*

that an error has been committed is no reason or even apology for repeating it, much less for perpetuating it." *Hart v. Burnett,* 15 Cal. 530, 600–01 (1860). As with past rules to which we adhered too long, I believe that the rule of law we announced in *Regie* and *Gilliard* runs contrary to fairness, justice, and equity and therefore should be overruled.

In *Regie,* we held that an amendment seeking to reflect the appointment of an insurance company as trustee in a wrongful death action could not relate back to the date of the original filing of the action because the original action, having been initiated before the insurance company was duly·appointed trustee, was a "legal nullity," a term which we neither elaborated upon nor defined. 399 N.W.2d at 92. In *Gilliard,* a summary reversal order, we similarly held that the Wrongful Death Act "requires the *appointment* of a trustee prior to the expiration of the 3–year statute of limitations, not the mere filing of a petition therefor within the statutory period." 1992 WL 121622, at *1.

While both *Regie* and *Gilliard* find some support in a long line of cases beginning with *Rugland v. Anderson,* 30 Minn. 386, 15 N.W. 676 (1883), where we established that adherence to the statute of limitations is a condition precedent to maintaining a wrongful death claim, I fail to see how prohibiting application of the relation back doctrine to wrongful death claims necessarily flows from those earlier cases. In this regard, I want to make it quite clear that I do not advocate overturning one-hundred plus years of case law and reasoning. But, even if we take the long-held proposition advocated in *Rugland* and its progeny to be true, we are left with the undeniable fact that in the present case a complaint asserting a wrongful death claim was filed within three years of Ortiz's husband's death, thereby satisfying the condition precedent. Although Ortiz filed that complaint in the wrong capacity, nothing in the language or purpose of the Wrongful Death Act requires us to ignore the fact that a wrongful death claim was timely filed by the surviving spouse.

The language of the Wrongful Death Act does not mandate the result reached by the majority. The Act provides that a trustee "may *maintain*" a wrongful death action and that, at the beneficiary's request, the court shall appoint "a suitable and competent person as trustee to commence or continue [the] action." Minn.Stat. § 573.02, subds. 1 and 3 (1998) (emphasis added). Black's Law Dictionary recognizes that the term "maintain" has numerous meanings, including "carry on; commence; continue; * * * hold or preserve in any particular state or condition; keep from falling, ·declining, or ceasing; keep in existence or continuance." Black's Law Dictionary 953 (6th ed.1990). Garner's *Dictionary of Modern Legal Usage* provides that maintain "is not synonymous with *begin* or *institute;* it embraces the idea of *continuing* or *upholding.*" Bryan A. Garner, *A Dictionary of Modern Legal Usage* 541 (2d ed.1995). Thus, the Act could be interpreted as leaving open the possibility that a wrongful death action may be initiated prior to the appointment of a trustee, but that appointment of a trustee is necessary to continue with the action. In any event, the language of the Act does not inevitably lead to the conclusion that a wrongful·death action brought before the appointment of a trustee is nothing more than a "legal nullity."

We have long recognized that the remedial purpose behind the Wrongful Death Act is to rectify the inequity·that existed in common law where civil recovery was permitted for torts causing injury, but not for those causing death. *See Fussner v. Andert,* 261 Minn. 347, 350; 113 N.W.2d 355, 357 (1961). To deny to Ortiz application of the relation back doctrine—a corrective remedy generally available to common law tort actions—simply because her complaint asserts a wrongful death claim perpetuates this inequity in violation of the Act's purpose.

Furthermore, there is no merit to the assertion that the Wrongful Death Act's statute of limitations is jurisdictional. As the majority points out, if the statute of limitations in Minn.Stat. § 573.02 were truly jurisdictional, then even the most compelling notion of equity could not resurrect an expired claim. However, we have in the past allowed equity to circumvent the statutory time limit for bringing a wrongful death claim. *See De-*

*Cosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 52 (Minn.1982) (applying to a wrongful death claim the common law rule tolling a statute of limitations in cases where the delay in bringing the action was by reason of fraud on the part of the defendant). *DeCosse* effectively precluded further argument that the Act's statute of limitations is jurisdictional and opened the door for equitable arguments to circumvent the Act's three-year limit.

In *Regie* itself, we relied on equity to help justify our harsh rule. We acknowledged in *Regie* that the vast majority of other jurisdictions do allow the relation back doctrine to apply to wrongful death claims and then distinguished those cases by stating that they frequently involved "blameless errors"; i.e., the party seeking to amend the complaint was not at fault for the delay in bringing the action. 399 N.W.2d at 90. We then spent a paragraph highlighting the inequity of allowing the insurance company's amendment to relate back, pointing out that the insurance company was not appointed trustee until 14 months after the statute of limitations had expired and then waited an additional eight months to amend its complaint. *Id.* Thus, under the facts and equities of *Regie*, use of the relation back doctrine in that case may indeed have been inappropriate. However, our reliance on *Regie* to justify a blanket prohibition of the relation back doctrine in all wrongful death cases has proven to be anything but equitable. Since *Regie*, we have applied this harsh rule twice, and neither time has fairness and justice been served. Using the words of Justice Cardozo, this rule "has been tested by experience [and] has been found to be inconsistent with the sense of justice."

*Gilliard*, for example, was clearly a case where equity did not support the application of *Regie's* harsh rule of law. There, the respondent had properly signed and filed her application to be appointed trustee with the clerk of court. *In re Gilliard*, No. C2–91–1811, 1992 WL 48044, at *1 (Minn.App. March 17, 1992). The court of appeals concluded that respondent's failure to be appointed trustee was through no fault of her own, but instead was "caused by the court administrator's failure to bring the applica-

tion to the court's attention and the attorney's failure to ensure that an order appointing a trustee was considered and signed." *Id.* Moreover, the court of appeals recognized that the rules of civil procedure specifically allowed the lower court to correct such clerical errors. *Id.* (citing Minn. R. Civ. P. 60.01). Despite the equities favoring the respondent, we summarily disallowed the respondent's claim without citing to anything in the Wrongful Death Act's language or underlying policy that required us to do so. *Gilliard*, 1992 WL 121622.

Likewise, in the present case, there can be no doubt that equity urges a result different from that reached by the majority. Ortiz timely completed all documents necessary to secure her appointment as trustee. She brought her claim to an attorney well within the statute of limitations, signed and returned all of the documents required for her to be appointed trustee, and, believing that she had been so appointed, timely served and filed a complaint specifically raising a wrongful death claim. Only a mistake by an assistant of Ortiz's attorney precluded Ortiz's claim from continuing. A review of our case law shows that in nearly any other context such a mistake would not be fatal to Ortiz's claim because the district court could simply apply the amendment and relation back doctrine espoused in Minn. R. Civ. P. 15 and 17.01.

Rules 15.03 and 17.01 of the Minnesota Rules of Civil Procedure permit amendments substituting or adding a party to a cause of action to relate back to the date of original filing of the complaint in order to circumvent an expired statute of limitations. The purpose of this relation back doctrine is to prevent meritorious cases from being dismissed for technical, procedural violations. *See Carlson v. Hennepin County*, 479 N.W.2d 50, 57 (Minn.1992) (citing *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865, 871 (Minn. 1989)).

Historically, we have applied these rules and have permitted the relation back of amendments so long as the defendant has adequate notice of the claim against him and would not be unfairly prejudiced by the relation back of the amendment. *See Grothe v.*

*Shaffer,* 305 Minn. 17, 22, 232 N.W.2d 227, 231 (1975). Where these equitable factors have not been met, we have denied application of the doctrine. *See, e.g., Bigay v. Garvey,* 575 N.W.2d 107 (Minn.1998); *Johnson v. Soo Line R.R. Co.,* 463 N.W.2d 894 (Minn. 1990). In *Regie,* we forbid application of the relation back doctrine to wrongful death claims on the ground that the original claim was a "legal nullity," but we have repeatedly applied the relation back doctrine in cases where the original unamended complaint could not have withstood a motion for judgment on the pleadings. *See, e.g., Carlson v. Hennepin County,* 479 N.W.2d 50 (Minn. 1992) (holding that an amendment changing the identity of the defendant to the party actually liable for the injuries could relate back to the date of original filing); *Fore v. Crop Hail Management,* 270 N.W.2d 13 (Minn.1978) (same); *Nelson v. Glenwood Hills Hospitals,* 240 Minn. 505, 62 N.W.2d 73 (1953). We have also applied the relation back doctrine to permit the addition and substitution of plaintiffs. *See Grothe v. Shaffer,* 305 Minn. 17, 232 N.W.2d 227 (1975). Moreover, despite our reluctance in *Regie* to apply the relation back doctrine to purely statutory causes of action, we have previously applied Rule 15.03 to permit the relation back of amendments to statutory claims. *See Swenson v. Emerson Elec. Co.,* 374 N.W.2d 690 (Minn.1985) (applying the relation back doctrine to permit the addition of a claim seeking damages under the federal Consumer Products Safety Act); *Heyn v. Braun,* 239 Minn. 496, 59 N.W.2d 326 (1953) (applying the relation back doctrine to a mechanic's lien action).

Here, the amendment Ortiz seeks clearly falls within the equitable parameters of Rules 15.03 and 17.01. Gavenda concedes that it would suffer no prejudice from the amendment. The amendment would merely correct Ortiz's complaint to reflect her appointment as trustee. Even with the amendment, Ortiz would still be the person pursuing the suit, Gavenda would still be the defendant, and the factual and legal issues would be unchanged. Thus, Gavenda received effective notice of Ortiz's suit by means of the original complaint. Still, the majority continues to deny application of the relation back doctrine to Ortiz's complaint simply because we denied application of the doctrine to wrongful death claims in *Regie* and affirmed that reasoning in *Gilliard.* To continue this anomalous treatment of wrongful death claims without statutory or policy justification is to ignore justice for the sake of continuity. Accordingly, I would hold that *Regie* and *Gilliard* are overruled to the extent that they preclude application of the amendment and relation back principles of Minn. R. Civ. P. 15 and 17 to wrongful death claims, and would permit Ortiz to amend her complaint and proceed with her claim.

GILBERT, J. (dissenting).

I join in the dissent of Justice Paul H. Anderson.