Bruce DeCOSSE, as trustee for the heirs of Napoleon L. DeCosse, deceased, Appellant,

v.

ARMSTRONG CORK COMPANY, et al., Respondents,

Celotex Corporation, etc., Respondent,

Combustion Engineering, Inc., Respondent,

Eagle-Picher Industries, Respondent,

Empire Asbestos Company, Defendant,

Fibreboard Paper Products Corporation, etc., Respondent,

Forty-Eight Insulation Company, Defendant,

Flintkote Company, Respondent,

GAF Corporation, etc., Respondent,

Keene Corporation, Respondent,

MacArthur Corporation, Respondent,

Nicolet Industries, Inc., etc., Respondent,

Owens-Corning Fiberglas Corporation, Respondent,

Owens-Illinois Corporation, Defendant,

Pittsburgh Corning Corporation, Respondent,

Raybestos-Manhattan, Inc., Defendant,

Southern Asbestos Company, etc., Respondent,

Standard Asbestos, Respondent,

Unarco Industries, Inc., Respondent.

No. 81–420.

Supreme Court of Minnesota.

May 14, 1982.

Schwebel, Goetz, Sieben & Hanson, James R. Schwebel and John C. Goetz, Minneapolis, for appellant.

Hansen, Dordell, Bradt & Orlaug and Gene P. Bradt, St. Paul, for Armstrong Cork Co.

Murnane, Conlin, White, Brant & Hoffman, Thomas M. Conlin and John S. Mathias, St. Paul, for Celotex Corp.

Louis Tilton, St. Paul, for Combustion Engineering, Inc.

Arndt & Benton, Duane Arndt and Dean D. Larsen, Minneapolis, for Eagle-Picher Industries, Inc.

Mahoney, Dougherty & Mahoney and Richard P. Mahoney, Minneapolis, for Fibreboard Paper Products Corp.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Michael Berens, Mark P. Wine and Catherine A. Cella, Minneapolis, for GAF Corp.

Douglas D. Reid, Minneapolis, for Flintkote Co.

Joyce & McHaffie and Richard T. McHaffie, St. Paul, for Keene Corp.

Pustorino & Pederson and Jon P. Parrington, Minneapolis, for MacArthur Corp.

Lommen, Nelson, Sullivan & Cole, Mark Sullivan and Thomas H. Jensen, Minneapolis, for Nicolet Industries, Inc.

Faegre & Benson, Martin N. Burke and John P. Borger, Minneapolis, for Owens-Corning Fiberglas Corp.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, James B. Vessey, Joel A. Flom, Minneapolis, for Owens-Illinois, Inc.

Collins, Buckley, Sauntry & Haugh and Eugene D. Buckley, St. Paul, for Pittsburgh Corning Corp.

Austin, Roth, Sunde, McDonough & Tierney and George S. Roth, Minneapolis, for Southern Asbestos Co.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, W. D. Flaskamp, Steven D. Jamar, and Bradley M. Jones, Minneapolis, for Standard Asbestos.

Hanft, Fride, O'Brien & Harries and Tyrone P. Bujold, Duluth, for Unarco Industries, Inc.

Mark J. Condon, Minneapolis, for Raybestos-Manhattan, Inc., defendant.

Johnson, Fredin, Killen, Thibodeau & Seiler, Thomas R. Thibodeau and James A. Wade, Duluth, for Johns-Manville Sales Corp.

SCOTT, Justice.

The plaintiff below commenced a wrongful death action in Hennepin County District Court on October 3, 1980.[1] Defendant below, Owens-Corning Fiberglas Corporation, moved for judgment on the pleadings February 4, 1981, arguing that the action was commenced outside the limitation period prescribed by the Minnesota Wrongful Death Act, Minn.Stat. § 573.02, subd. 1 (1976). The other defendants joined in the motion made pursuant to Minn.R.Civ.P. 12.-03. The motion was granted by the district court and judgment was entered March 25, 1981. Plaintiff filed this appeal April 13, 1981, and the record consists of the pleadings and three affidavits submitted by the plaintiff to the trial court in opposition to the Rule 12.03 motion.[2]

1. A similar action against a similar group of defendants was brought in federal district court in April 1980, but was voluntarily dismissed without prejudice in September 1980.

2. The trial judge appears to have granted defendants' motion for judgment on the pleadings; however, because affidavits outside the pleadings were considered, the Rules require that the motion be treated as a request for summary judgment, Minn.R.Civ.P. 12.03. Consequently, this appeal is more properly described as being from an entry of summary judgment for the defendants.

■ Where an action is dismissed on summary judgment, the facts asserted by the plaintiff are taken to be true for purposes of appeal, *Hauser v. Mealey*, 263 N.W.2d 803 (Minn.1978); therefore, what follow are essentially the facts as alleged by the appellant.

Napoleon Lyric DeCosse was born July 4, 1900. He died March 14, 1976, in Sun City, Arizona. For most of his working life Napoleon DeCosse was employed as a pipe coverer or insulator, belonging to the Twin Cities Local of the International Association of Heat and Frost Insulators & Asbestos Workers. Mr. DeCosse is survived by his wife, Estelle, and two sons, Bruce (plaintiff/appellant) and Lyric DeCosse.

Napoleon DeCosse retired in 1968. In 1969 he and his wife moved to Sun City, Arizona. Though he had experienced some prior heart problems, Mr. DeCosse retired in good health and had an active life until late 1975.[3] At that time his physical condition began to deteriorate rapidly and several months of illness preceded his death in March of 1976. Mrs. DeCosse believed her husband's death was caused by his heart condition, although one of his doctors mentioned that he might have had cancer. Mrs. DeCosse assumed that because he was a non-smoker the heart condition was the more likely cause of death.[4]

In early 1980 Mrs. DeCosse was contacted by Dr. Irving Selikoff of New York.[5] Dr. Selikoff was doing research on the effects of asbestos exposure on asbestos workers. Apparently Dr. Selikoff had obtained Mr. DeCosse's medical records and determined that peritoneal mesothelioma was the cause of his death. Peritoneal mesothelioma is a type of abdominal cancer that has been closely linked with asbestos exposure.[6] The DeCosse family brought the action which is the subject of this appeal after learning that Napoleon DeCosse might have died from exposure to asbestos during his working years. Because this is an appeal from summary judgment, we accept as true appellant's allegations that respondents were aware of the health hazards caused by asbestos exposure yet continued to manufacture defective products and failed to warn potential victims of the dangers to their health.

This appeal presents the following legal issues:

(1) Whether the limitation period of the Minnesota Wrongful Death Act, Minn.Stat. § 573.02 (1976), is subject to tolling for respondents' fraudulent concealment of appellant's cause of action and/or for appellant's failure to discover the cause of death; and (2) whether tolling of the limitation period of Minn.Stat. § 573.02 (1976) for

3. Mr. DeCosse was somewhat disabled by a stroke in 1973, but substantially recovered his health.

4. The record does not disclose the extent of Mrs. DeCosse's knowledge of the results of asbestos-related disease research; however, her apparent assumption that smoking substantially increased the risk of cancer for asbestos workers is strongly supported in the scientific literature. *See* W. Nicholson, *Control of Sprayed Asbestos Surfaces in School Buildings: A Feasibility Study*, Report to the National Institute of Environmental Health Sciences, June 15, 1978, at 5 (risk of lung cancer ninety times greater if the worker smoked), *cited in* Comment, *Asbestos Litigation: The Dust Has Yet to Settle*, 7 Fordham Urb.L.J. 55, 60 n.44 (1978).

5. Dr. Irving Selikoff is one of the leading authorities on the effects of asbestos exposure. He serves as Professor of Community Medicine at the Mount Sinai School of Medicine of the City University of New York, and as Director of its Environmental Health Sciences Center. His research emphasizes problems of environmental cancer, particularly those associated with materials in industry.
Comment, *supra* note 4, 7 Fordham Urb.L.J. at 60 n.41.

6. "Mesothelioma was previously so rare that it was known to occur in only about one in ten thousand deaths in the general population." *Id.* at 58 n.22. Dr. Selikoff found in the mid-1960's that, in contrast to the one-in-ten-thousand ratio for the general population, ten of the 307 deaths (1943–1964) of asbestos workers he studied involved the presence of the mesothelioma type of tumor. *Id.* at 58 n.26, 61 n.45. "Effective therapy for mesothelioma is not currently available and early diagnosis does not significantly increase the likelihood of survival." *Id.* at 58 n.22.

fraudulent concealment of a cause of action or failure to discover the cause of death is required by the equal protection clauses of the Minnesota and United States Constitutions.

1. The inquiry in this case must begin with an analysis of the statute. On the date of death the relevant portion of the Minnesota Wrongful Death Act read:

> When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. *The action may be commenced within three years after the act or omission.*

Minn.Stat. § 573.02, subd. 1 (1976) (emphasis added). The current codification reads:

> When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by the wrongful act or omission. An action to recover damages for a death caused by the alleged professional negligence of a physician, surgeon, dentist, hospital or sanatorium, or an employee of a physician, surgeon, dentist, hospital or sanatorium shall be commenced within the time set forth in section 541.07, subdivision 1. *Any other action under this section may be commenced within three years after the date of death provided that the action must be commenced within six years after the act or omission.*

Minn.Stat. § 573.02, subd. 1 (1980) (emphasis added).

Both parties concede that there has never been a specific tolling provision provided anywhere in section 573.02. The absence of such specificity puts this court in the position of having to speculate about the legis-

lature's intent.[7] This appeal actually presents two problems of statutory interpretation. First, does this wrongful death action *accrue* upon the date of death by a wrongful act or omission, the date of the wrongful act or omission, or the date of discovery of the damage giving rise to the cause of action? Second, are the limitation periods set out in the wrongful death statute *tolled* by either the reasonable failure to discover that death was caused by a wrongful act, or the fraudulent concealment of the cause of action?

Regarding the first problem, appellant strenuously argues that the legislature could not have intended that the right to bring a wrongful death action could expire prior to the death of the potential claimant. However, respondents contend that no other interpretation could be given to the language of the 1976 codification requiring that the action be brought within three years of the "act or omission." The current version, enacted in 1978, Act of March 28, 1978, ch. 593, § 1, 1978 Minn.Laws 330, also presents the possibility that a wrongful death action could expire before death by limiting the bringing of actions to six years after the act or omission. Time-barring a wrongful death action before death triggers accrual of the right to bring the action has been criticized as illogical and unjust. *See* 6 Minn.L.Rev. 584, 586 (1922). Despite any injustice or illogic to such an approach, the plain meaning of the statute seems to be clear. By the 1978 amendment the legislature is expressing its intention to bar actions for some deaths caused by wrongful acts or omissions even if they are brought on the day of death.

In this case, however, the most reasonable interpretation is to hold that the cause of action accrued on the date of death. Such an interpretation is dictated by the unique character of an asbestos-related disease. The Eighth Circuit Court of Appeals, in *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155 (8th Cir. 1975), has held

---

7. The historical development of the wrongful death statute is traced in *Fussner v. Andert*, 261 Minn. 347, 350–52, 113 N.W.2d 355, 357–58 (1961), cited in *Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226, 228 n.2 (Minn.1982).

that exposure to asbestos is "in the nature of a continuing tort. It is when the disease manifests itself in a way which supplies some evidence of causal relationship to the manufactured product that the public interest in limiting the time for asserting a claim attaches and the statute of limitations will begin to run." *Id.* at 160–61.[8] Therefore, even applying the 1976 statute, the act or omission of exposing Mr. DeCosse to asbestos would continue until the disease manifested itself *and was causally linked to respondents' products.*[9] Though the disease may have manifested itself some months before Napoleon DeCosse died, it was apparently never linked to asbestos or diagnosed as a mesothelioma before death.[10] Nevertheless, because Mr. DeCosse died in 1976, but appellant did not commence his wrongful death action until 1980, the three-year period has passed.

This, then, squarely raises the tolling issue. Should the limitation period be tolled either because appellant failed to discover the cause of death, or the respondents fraudulently concealed the facts underlying the cause of action? In our opinion, the period should be tolled for the latter reason and not the former.

This court has on occasion concluded that meeting the requirements of the limitation period was a "condition precedent" to the right to bring a wrongful death action. *See, e.g., Berghuis v. Korthuis*, 228 Minn. 534, 37 N.W.2d 809 (1949); *Cashman v. Hedberg*, 215 Minn. 463, 10 N.W.2d 388 (1943); *Rugland v. Anderson*, 30 Minn. 386, 15 N.W. 676 (1883). However, though relied on by the trial court and respondents, these cases presented significantly different issues than the present one. In *Cashman* and *Berghuis* the court was attempting to resolve a conflict between the wrongful death limitation period and the limitation and tolling provisions contained *in other statutes.* The court has not been presented with the question of the applicability of *common law* tolling principles to wrongful death actions.

The *Cashman* court was asked to determine if the tolling provision contained in the general limitation statute tolled the specific limitation period contained in the wrongful death act. The general tolling statute in effect at the time[11] provided that:

> The time which elapses between the death of a person and the granting of

---

**8.** *Karjala* was a personal injury action. For a similar holding in a silicosis case, see *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In *Urie*, rejecting the argument that the three-year statute of limitations of the Federal Employers' Liability Act barred plaintiff's cause of action, Justice Rutledge commented:

> If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.

*Id.* at 169, 69 S.Ct. at 1024.

**9.** An additional reason exists for refusing to adopt respondents' "last exposure" approach to the question of when an asbestos-related

wrongful death action accrues. In 1973 the Minnesota legislature enacted a law which prohibits the use of powdered asbestos in the construction or improvement of buildings in this state. Act of May 24, 1973, ch. 742, § 1, 1973 Minn.Laws 2226 (codified at Minn.Stat. § 325F.01 (1980)). If there has been compliance with this law, more than six years have passed since the last act or omission of exposing workers in Minnesota to powdered asbestos occurred. We cannot believe that when it enacted this protective legislation the legislature intended to preclude actions on all deaths caused ·by exposures to powdered asbestos where the last exposure occurred prior to 1973.

**10.** Based on the sparse factual record before us in this case, we must conclude that the trustee's assertion, that there was insufficient reason to suspect mesothelioma prior to death, is correct.

**11.** Minn.Stat. § 541.16 (1941) (Mason St. 1927, § 9203), *amended by* Act of June 5, 1975, ch. 347, § 141, 1975 Minn.Laws 1006, 1103.

letters testamentary or of administration on his estate, not exceeding six months, and a period of six months after the granting of such letters, are not to be deemed any part of the time limited for the commencement of actions by executors or administrators.

Minn.Stat. § 541.16 (1941). Special letters of administration were not granted until nearly three years after the plaintiff's death. The wrongful death action was commenced on the day the letters of administration were granted.

After a review of the legislative history, the court concluded that because the tolling provisions of the general limitations statute were in existence prior to the enactment of the wrongful death statute the legislature "could not possibly have had in mind that the tolling provisions in the limitation statute should affect the death statute, not yet in being." 215 Minn. at 471, 10 N.W.2d at 393. The *Cashman* court stated: "While doubtful of the wisdom and fairness of the present status of the law in this respect, it is not for us to encroach upon the legislative function by a construction of a statute which does violence to the plain intention of the lawmaking body." *Id.* at 473, 10 N.W.2d at 393–94.

Six years later the court was again asked to allow a wrongful death action to be brought more than two years (the limitation period in effect at the time) after the death. In *Berghuis v. Korthuis*, 228 Minn. 534, 37 N.W.2d 809 (1949), the court found the provisions of the statute which defines when a cause of action is considered as begun applicable to wrongful death actions. In *Berghuis*, process was delivered to the home of the defendant's mother through the local sheriff within the two-year period, but the defendant was not personally served until more than two years after the death. Minn.Stat. § 541.12 (1945) permits commencement of an action to be effective under such circumstances provided personal

service occurs within 60 days after process is delivered to the proper officer.

Therefore, although the trial court correctly noted that elsewhere in the *Berghuis* opinion the lapse of the wrongful death limitation period is described as an absolute bar, the result in *Berghuis* belies that conclusion. In fact, the references in *Berghuis* to the principles enunciated in *Cashman* are unnecessary because the action was deemed commenced within the time limit by the operation of Minn.Stat. § 541.12 (1945).

This case, however, does not require us to do what we said we could not do in *Cashman*—namely, encroach upon the legislative function by engrafting a provision of the general statute of limitations onto the wrongful death act limitation period. The appellant instead asks that we apply a generally accepted,[12] and judicially created, tolling doctrine to the wrongful death act.

This court first adopted the doctrine that fraud tolls a limitation period in *Schmucking v. Mayo*, 183 Minn. 37, 235 N.W. 633 (1931).[13] In that case, the court stated:

Two reasons adequately support the rule: First, one who cannot assert his right because the necessary knowledge is improperly kept from him is not within the mischief the statute was intended to remedy; but is within the spirit of the law that restrains its operation. There is no reason, resting on general principles, why ignorance that is the result of defendant's actual fraud and not the stupidity or lack of diligence of plaintiff should not prevent the running of the statute in favor of the wrongdoer. Secondly, a person should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him. He should not be permitted to profit by his own wrong, and it would strike the moral sense strangely to permit him to do so.

* * * Fraud is bad, it should not be permitted to go unchecked anywhere, and

---

12. *See generally* Restatement (Second) of Torts § 550 (1976).

13. The doctrine had been gaining support since 1866. *See, e.g., Cock v. Van Etten*, 12 Minn.

522 (Gil.431) (1866–67); *P. P. Mast & Co. v. Easton*, 33 Minn. 161, 22 N.W. 253 (1885), and other cases cited in *Schmucking*, 183 Minn. at 40, 235 N.W. at 634.

justice should always be able to penetrate its armor. We are of the opinion that fraudulent concealment tolls the statute of limitations.

*Id.* at 40–41, 235 N.W. at 634. Though the *Schmucking* case was a malpractice action, there is no indication from the legislature that it wished to exempt the statutorily created wrongful death action from the common law rules that seek to avoid rewarding fraud.[14]

It is important not to lose sight of the fact that appellant retains the burden of establishing the elements of fraudulent concealment. The Restatement (Second) of Torts § 550 (1976), describes the situations in which fraudulent concealment is commonly applied. The Restatement comments take the position that actively concealing a defect or disadvantage in something constitutes fraudulent concealment. In addition,

[A] false denial of knowledge or information by one party to a transaction, who is in possession of the facts, may subject him to liability as fully as if he had expressly misstated the facts, *if its effect upon the plaintiff is to lead him to believe that the facts do not exist or cannot be discovered.*

*Id.*, comment b. The asbestos-related case law and commentaries make it clear to this court that appellant may be able to establish that respondents have been less than candid in disclosing to those exposed to their products the potentially deleterious effects of that exposure.[15] Whether this lack of candor rises to the level of tortious fraudulent concealment is a question for the factfinder.

The case for tolling the period based on failure to discover the cause of death is weaker. Though the legislature may not wish to aid the defrauder, it could reasonably desire in the interest of repose not to apply the so-called discovery rule, *see Dalton v. Dow Chemical Co.,* 280 Minn. 147, 158 N.W.2d 580 (1968), to wrongful death actions. Facing a similar problem, the North Dakota Supreme Court held:

The discovery rule applicable in malpractice actions does not apply to wrongful death actions because it is the fact of death itself which should indicate a starting point for inquiry regarding a cause of action for wrongful death. When the facts used to determine whether a cause of action exists are equally available to the plaintiff, no additional aid in terms of a discovery period is necessary.

*Krueger v. St. Joseph's Hospital,* 305 N.W.2d 18, 23 (N.D.1981). The court also stated: "The situation is much different in a wrongful death action when the facts used to determine whether a cause of action exists are rendered unascertainable due to

---

**14.** At oral argument counsel for appellant brought to our attention the discussion of *Schmucking* in *Kopperud v. Agers,* 312 N.W.2d 443, 446–47 (Minn.1981). We agree with appellant that the application of the fraudulent concealment doctrine in the context of securities law has no bearing on this case.

**15.** *See* Comment, *supra* note 4, 7 Fordham Urb. L.J. at 63–64:

Industry has tried to reduce publicity concerning asbestos health hazards. In October of 1964, the New York Academy of Sciences sponsored an international conference on the Biological Effect of Asbestos which was attended by more than four hundred scientists. Immediately thereafter, a letter was sent to the executive director of the Academy by lawyers representing the Asbestos Textile Institute, an association of asbestos manufacturers that includes Johns-Manville Corporation, Raybestos-Manhattan, Inc., and Uniroyal, Inc. The letter expressed concern over recent articles carried in local and national newspapers concerning mesothelioma and stated that "unwise treatment of research data in public discussions could cause reactions which were not justified by the state of scientific knowledge."

\* \* \* \* \* \*

Industry now attempts to minimize the medical risks by challenging the studies which have been conducted and the conclusions which have been reached. In October 1978 the American Industrial Health Council (AIHC) issued a "Reply" to the government's recent statements concerning the incidence of cancer associated with occupational exposure to hazardous substances, including asbestos. The AIHC criticized the government's "selective use of data, which was often outdated and of questionable scientific validity."

(Citations omitted.)

fraud or fraudulent concealment." *Id.* at 24.[16]

In this case the record does not disclose the facts available to Dr. Selikoff that led him to conclude that mesothelioma was the cause of death. Assuming, as we must on the appeal of a grant of summary judgment, that these facts were not known to appellant as was contended in his affidavits, we still feel compelled to reject the discovery rule. It is not in the public interest, absent a showing of fraudulent concealment, to encourage, literally, the unearthing of wrongful death causes of action long after the death has occurred because there is some suspicion that death was caused by a wrongful act.

■■ We hold that the wrongful death act is subject to tolling where a cause of action is fraudulently concealed. We further hold that, because of the unique character of asbestos-related deaths, wrongful death actions brought in connection with those deaths accrue either upon the manifestation of the fatal disease in a way that is causally linked to asbestos, or upon the date of death—whichever is earlier.

2. The equal protection issue raised by appellant need not be addressed in light of our resolution of the first issue. We have held that the legislature did not intend to exclude wrongful death claimants from the benefit of common law tolling provisions; therefore, we need not determine if such a result is constitutionally mandated.

Reversed and remanded.

PETERSON, J., took no part in the consideration or decision of this case.

---

**16.** *But see In re Johns-Manville Asbestosis Cases,* 511 F.Supp. 1235 (N.D.Ill.1981) (federal district court in Illinois interpreted an Illinois wrongful death act, with a limitation period viewed by state courts as a "condition of liability," as subject to tolling by the discovery rule).