Homer A. BONHIVER and Moira
Bonhiver, Appellants,

v.

FUGELSO, PORTER, SIMICH AND
WHITEMAN, INC., Respondent,

Wille Construction Company,
Respondent,

Regents for University of Minnesota,
Respondent.

No. CX–83–1204.

Supreme Court of Minnesota.

Sept. 14, 1984.

Clint Grose, Minneapolis, for appellants.

Garrett E. Mulrooney, Larry B. Guthrie, Minneapolis, for Wille Construction Co.

James R. Gowling, St. Paul, for Regents.

Russell C. Brown, St. Paul, for Fugelso et al.

AMDAHL, Chief Justice.

This appeal, arising out of the injuries and subsequent death of Moira Bonhiver, requires us to construe certain limitation provisions contained in Minnesota's wrongful death statute, Minn.Stat. § 573.02 (1976). In addition, we must address whether the trial court's dismissal of appellant Homer Bonhiver's wrongful death claim for failure to prosecute under Minn. R.Civ.P. 41.02(1) and dismissal of appellant's derivative claim of loss of consortium were proper.

On February 22, 1975, Moira Bonhiver (now deceased) sustained serious injuries, including a broken hip, when she fell at the Marshall Performing Arts Center, at the University of Minnesota Duluth Campus. The Bonhivers were searching for the dressing room of a friend. Moira walked down a ramp, known as Ramp A, and through a set of double doors and fell down the steps on the other side of the door. The original claim against the defendants alleged negligence in the design and construction of the steps and failure to warn of the sudden change in elevation (premise liability) and was filed February 11, 1976.

On November 7, 1977, Moira Bonhiver died from a myocardial infarction. Prior to the accident, Moira suffered from diabetes which was under control. Homer avers that Moira's severe injuries aggravated her diabetic condition which in turn ultimately led to her heart attack.

As previously mentioned, the court and parties were notified by appellant's attorney of Moira's death. Appellant's attorney wrote that "it is our intention to present to the Court a Petition appointing [Homer A. Bonhiver] as trustee [for] the heirs and next of kin of Moira Bonhiver, and have him, as trustee, continue with the lawsuit presently pending." Prior to Moira's death, a significant amount of discovery had been conducted for the original tort action.

Subsequent to his wife's death, Homer consulted his attorney about the possibility of pursuing a medical malpractice action against Moira's treating physician and the hospital. This course of action was abandoned; nevertheless, appellant asserts that he had difficulty securing the cooperation of the physician and hospital until the medical malpractice statute of limitations had run. Apparently, Moira Bonhiver's medical records were not obtained until the physician and hospital were satisfied that Homer did not intend to pursue a malpractice action.

On March 9, 1978, appellant's counsel sent several limited medical authorizations to an attorney in this action for the Board of Regents of the University of Minnesota. In his letter accompanying the authorizations, appellant's attorney stated, "it is my intention to meet with the doctors involved

in this case during the month of April. I expect that after these appointments have been kept, medical reports will be issued and upon receipt of these reports, I will furnish the same to you." After this communication, trustee Bonhiver was not heard from again until November 29, 1982, when the petition for appointment as trustee pursuant to Minn.Stat. § 573.02 (1976) was filed with the St. Louis County District Court. In an affidavit, trustee Bonhiver states that "both the doctors and hospitals * * * were extremely uncooperative in discussing my wife's death and its cause with me and refused to furnish me with the complete reports and records concerning her death and their treatment of her." Trustee Bonhiver's attorney executed a similar affidavit. None of the defendants ever received any of the medical reports referred to in the March 9, 1978, letter.

On December 16, 1982, Homer Bonhiver petitioned the St. Louis County District Court to continue the suit initiated on February 11, 1976, as a wrongful death action pursuant to Minn.Stat. § 573.02, subd. 1 (1976). Shortly afterwards, the defendants moved the court to dismiss the action asserting that the statute of limitations barred further proceedings and that the action should be dismissed for failure to prosecute under Rule 41.02(1) of the Minnesota Rules of Civil Procedure. The petition to continue and motions to dismiss were consolidated and heard together. After the St. Louis County District Court ruled in respondents' favor, this appeal followed.

1. When Moira Bonhiver died, Minn. Stat. §§ 573.01–.02 (1976) were in effect. Those statutes provided in pertinent part:

**573.01 Survival of Causes.** A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, *except as provided in section 573.02* * * *.

**573.02 Action for Death by Wrongful Act.** Subdivision 1. When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor *if the decedent might have maintained an action, had he lived,* for an injury caused by such wrongful act or omission. *The action may be commenced within three years after the act or omission.* * * *

*If an action for such injury was commenced by the decedent and not finally determined during his life, it may be continued by the trustee for recovery of such damages for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court on motion shall make an order allowing such continuance and directing pleadings to be made and issues framed as in actions begun under this section.*

\*   \*   \*   \*   \*   \*

Subd. 3. Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction of an action falling within the provisions of subdivisions 1 or 2, shall appoint a suitable and competent person as trustee to commence or continue such action and obtain recovery of damages therein. The trustee, before commencing his duties shall file his consent and oath. Before the trustee shall receive any money, he shall file a bond as security therefor in such form and with such sureties as the court may require.

*Id.* (Emphasis added.)

Under Minn.Stat. § 573.01 (1976),[1] Moira Bonhiver's claims against the defendants died with her unless the action falls within Minn.Stat. § 573.02 (1976). Minn.Stat. § 573.02 (1976) requires that in order to continue the action the decedent must have been able to maintain an action for personal injuries had he lived. In addition, Minn. Stat. § 573.02 requires the suit to be

---

**1.** In *Thompson v. Estate of Petroff,* 319 N.W.2d 400 (Minn.1982), *annotated in* 30 A.L.R. 4th 695, we declared that certain provisions of Minn. Stat. § 573.01 (1980) violated the Minnesota Constitution. The specific provisions involved in *Thompson,* however, do not affect the instant litigation.

brought within 3 years of the alleged act or omission.

Without any further reading of the statute, the requirements seem to indicate that, at the latest, trustee Bonhiver's suit should have been brought by February 22, 1978 —3 years from the date of Moira's fall. The second paragraph of § 573.02, subd. 1 (1976), however, may create an ambiguity as to when suit must be initiated. Arguably, the second paragraph excludes suits initiated by the decedent during his lifetime from the 3-year limitation period that applies to wrongful death actions generally.[2]

A brief outline of the basic principles underlying the wrongful death statute and general principles of statutory construction is necessary prior to our discussion of the issue of the limitation period. Historically, common law did not permit a civil action for wrongful death; the heirs' only recourse was the criminal law. In 1846, Lord Campbell's Act was adopted to remedy this inequity. Lord Campbell's Act permitted certain designated beneficiaries to maintain an action for damages. *See* Lord Campbell's Act, 1846 (9 & 10 Vict. c. 93), *cited in*, W. Prosser, Handbook of the Law of Torts § 127 at 902 (4th ed. 1971). In 1851, Minnesota enacted a wrongful death statute modeled after Lord Campbell's Act. *See* Minn.Rev.Stat. (Terr.) c. 78, § 3 c. 78, § 3 (1851).

Because the right to maintain an action for wrongful death is created by statute and is in derogation of the common law, the requirements of the statute have generally been strictly construed. *See, e.g., Wit-* *thuhn v. Durbahn*, 279 Minn. 437, 157 N.W.2d 360 (1968) (strict construction of 2-year limitation); *Berghuis v. Korthuis*, 228 Minn. 534, 37 N.W.2d 809 (1949) (meeting requirements of limitation period is a condition precedent to bringing suit); *Cashman v. Hedberg*, 215 Minn. 463, 10 N.W.2d 388 (1943) (limitation period is a condition precedent to wrongful death suit); *Rugland v. Anderson*, 30 Minn. 386, 15 N.W. 676 (1883) (per curiam) (suit *must* be commenced within 2 years of death). In contrast to the prerequisites to bringing suit, the remedy provisions of the wrongful death statute have been explicitly held to be "remedial in character and it is the court's duty to construe [them] liberally * * *." *Fussner v. Andert*, 261 Minn. 347, 354, 113 N.W.2d 355, 359 (1961), *citing Shumway v. Nelson*, 259 Minn. 319, 322, 107 N.W.2d 531, 533 (1961).[3]

Minn.Stat. § 645.26, subd. 1 (1982), provides that:

When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. *If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision,* unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

*Id.* (Emphasis added.) Hence, if the general conditions required for bringing suit under Minn.Stat. § 573.02 (1976) conflict

---

**2.** This ambiguity remains in the present version of Minn.Stat. § 573.02, which provides in part:

An action to recover damages for a death caused by an intentional act constituting murder may be commenced at any time after the death of the decedent. Any other action under this section may be commenced within three years after the date of death provided that the action must be commenced within six years after the act or omission.

Minn.Stat. § 573.02, subd. 1 (1983 Supp.). The second paragraph of Minn.Stat. § 573.02, subd. 1 (1983 Supp.), does not contain any time limitation for previously initiated suits that are later converted to a wrongful death action. We urge the legislature to consider and clarify this ambiguity.

**3.** It is interesting to note that *Fussner* cites *Shumway* for the proposition that the remedy provisions of the wrongful death statute are to be construed liberally. *Shumway*, however, involved construction of the conditional language "if the decedent might have maintained an action, had he lived." *Shumway*, 259 Minn. at 322, 107 N.W.2d at 533. The *Shumway* court held that the above-quoted conditional language would not be construed narrowly. *Id.* This holding sharply contrasts with the holdings in *Witthuhn, Berghuis,* and *Cashman.*

with more specific provisions in Minn.Stat. § 573.02 (1976), then the specific provisions apply.

Recently, we decided *DeCosse v. Armstrong Cork Company,* 319 N.W.2d 45 (Minn.1982), which involved the effect of fraud on the tolling of the wrongful death statute of limitations. *DeCosse* specifically addressed this issue with respect to the 1976 version of Minn.Stat. § 573.02—the version applicable in the instant case.

The *DeCosse* opinion first discussed *when* a cause of action for wrongful death accrued.[4] This court noted a recent amendment to the wrongful death statute[5] and commented:

> The current version, enacted in 1978, Act of March 28, 1978, ch. 593, § 1, 1978 Minn.Laws 330, also presents the possibility that a wrongful death action could expire before death by limiting the bringing of actions to six years after the act or omission. *Time-barring a wrongful death action before death triggers accrual of the right to bring the action has been criticized as illogical and unjust. See* 6 Minn.L.Rev. 584, 586 (1922). Despite any injustice or illogic to such an approach, the plain meaning of the statute seems to be clear. *By the 1978 amendment the legislature is expressing its intention to bar actions for some deaths caused by wrongful acts or omissions even if they are brought on the day of death.*

*DeCosse,* 319 N.W.2d at 48 (emphasis added). We held that the cause of action accrued on the date of death because of the unique character of an asbestos-related disease. *Id.*

With respect to whether fraudulent concealment tolled the statute of limitations for wrongful death, we held in the affirmative. *Id.* at 52. Before reaching this conclusion, though, *DeCosse* outlined the well-established principle that "meeting the requirements of the limitation period was a 'condition' precedent to the right to bring a wrongful death action." *Id.* at 49. *DeCosse* did not dilute the strength of this principle, but rather created a narrow exception to the rule when fraud was involved. "[T]here is no indication from the legislature that it wished to exempt the statutorily created wrongful death action from the common-law rules that seek to avoid rewarding fraud." *Id.* at 51 (footnote omitted).

■ The principle that the "period fixing the time within which the right of action for wrongful death may be exercised is not an ordinary statute of limitations," *Berghuis v. Korthuis,* 228 Minn. at 536, 37 N.W.2d at 810, was established over 100 years ago in *Rugland v. Anderson,* 30 Minn. 386, 15 N.W. 676 (1883) (per curiam).[6] Satisfaction of the limitation period is an absolute prerequisite to bringing suit.

The instant case, however, is distinguishable from *Rugland* and its progeny. A suit for personal injuries was already initiated in this case and then the named plaintiff died. This suit falls directly within the ambit of the second paragraph of Minn. Stat. § 573.02, subd. 1 (1976). *Anderson v. Fielding,* 92 Minn. 42, 99 N.W. 357 (1904), appears to be one of the few exceptions to the *Rugland* line of authority. In *Anderson,* like the instant case, the plaintiff first initiated a personal injury suit for injuries

---

4. [That] appeal actually presents two problems of statutory interpretation. First, does this wrongful death action *accrue* upon the date of death by a wrongful act or omission, the date of the wrongful act or omission, or the date of discovery of the damage giving rise to the cause of action? Second, are the limitation periods set out in the wrongful death statute *tolled* by either the reasonable failure to discover that death was caused by a wrongful act, or the fraudulent concealment of the cause of action?

*DeCosse,* 319 N.W.2d at 48 (emphasis in original).

5. *See supra* footnote 2.

6. The *Rugland* opinion observed that the right to maintain the action was created by statute and that with respect to the limitation "the statute makes no exception, and none can be made by construction." 30 Minn. at 386, 15 N.W. at 676. *See also Cashman v. Hedberg,* 215 Minn. 463, 10 N.W.2d 388 (1943).

suffered in May of 1902. The jury returned a verdict for the plaintiff and defendant moved for a j.n.o.v. or, in the alternative, a new trial. The motion for a new trial was granted and plaintiff appealed. In September of 1903, the plaintiff died prior to a final decision on the appeal. This court affirmed the granting of a new trial and then discussed what the posture of the case would be on remand:

> Now, if the action which the personal representative is authorized by the proviso to prosecute is the common-law action which the deceased had a right to maintain, and which would die with him except for the proviso, why was not the proviso added to section 5912 providing that a cause of action arising out of an injury to a person dies with him? Again, *in cases where the deceased commences an action for recovery of damages sustained by him, and he dies two or more years after his injury resulting in his death, but before the final determination of the action, the cause of action by the personal representatives for the benefit of the widow and next of kin would be barred except for this proviso, which was intended to afford a remedy in such cases, and also to avoid the delay and expense of commencing another action.*
>
> *We accordingly hold that the only permissible construction of the proviso is that it authorizes the personal representative of the deceased, when the facts warrant it, to be substituted as plaintiff in the original action brought by the deceased, and convert it by amendment of the pleadings into an action under section 5913, as it stood before the proviso was added, for the benefit of the widow and next of kin.* It does not authorize such substitution for the purpose of prosecuting the original cause of action which accrued to the deceased in his lifetime.

*Anderson*, 92 Minn. at 51, 99 N.W. at 360 (emphasis added).

Hence, *Anderson* addresses a fact situation identical to the instant case and also construes a statutory provision that is the precursor to the second paragraph of Minn. Stat. § 573.02, subd. 1 (1976). *Cf. Mattfeld v. Nester*, 226 Minn. 106, 32 N.W.2d 291 (1948) (no record of court authorizing special administrator to continue previously initiated personal injury suit as wrongful death under Minn.Stat. § 573.02, but court certifies that it made such an order).

The second paragraph of Minn.Stat. § 573.02, subd. 1 (1976), addresses the specific situation where a personal injury suit has been initiated but no final determination has been reached. In addition, this paragraph does not contain a time limitation. Appellant urges us to construe the second paragraph as an exception to the general time limitations for bringing suit provided in the first paragraph because an action, albeit not for wrongful death, has been initiated. Consequently, the parties to the suit do have notice. Moreover, the second paragraph of Minn.Stat. § 573.02 (1976) seems to contemplate a purely procedural conversion of a personal injury action into a wrongful death action by the substitution of parties.[7] *See* Minn.Stat. § 573.02,

---

7. *Cashman v. Hedberg*, 215 Minn. 463, 10 N.W.2d 388 (1943), militates against a procedural view of the statute. *Cashman* specifically addressed whether the limitation period prescribed by Minn.Stat. § 573.02 (1941) was extended by the general statute of limitation tolling provisions of Minn.Stat. § 541.16 (1941).

Rights under the death statute, on the contrary, arise only by reason of death itself and not until then. *It, perforce, cannot be an action which survives death, since death itself creates it.* These two statutes, therefore, deal with different classes of actions and are not *in pari materia*. The rule of *in pari materia* can be invoked only when the two statutes under consideration relate to the same subject matter and the same class of actions. Such is not the situation in the case at bar. We reluctantly reach the conclusion that plaintiff is barred by § 573.02, *supra*, because his action was not commenced within the two-year limitation period. While doubtful of the wisdom and fairness of the present status of the law in this respect, it is not for us to encroach upon the legislative function by a construction of a statute which does violence to the plain intention of the lawmaking body. We are of the opinion that justice will be better served if a saving clause is added to the death statute so as to make applicable thereto the tolling pro-

subd. 1 (1976) ("The court *on motion* shall make an order * * *.")

We hold that the specific provision contained in Minn.Stat. § 573.02, subd. 1 (1976), concerning previously initiated personal injury suits is an exclusion to the general provision that suit must be brought within 3 years. Both *Anderson* and Minn. Stat. § 645.26, subd. 1 (1982), support this holding. The statute of limitations is not a bar to trustee Bonhiver's wrongful death action.

2. The district court also dismissed Homer Bonhiver's claims on the basis of his failure to prosecute. Rule 41.02(1) of the Minnesota Rules of Civil Procedure controls involuntary dismissals for failure to prosecute and provides as follows:

> (1) The court may on its own motion, or upon motion of a party, and upon such notice as it may prescribe, dismiss an action or claim for failure to prosecute or to comply with these rules or any order of the court.

Use of Rule 41.02(1) is infrequent and is within the sound discretion of the trial court. *Scherer v. Hanson*, 270 N.W.2d 23, 24 (Minn.1978) (per curiam). Involuntary dismissal is a severe remedy because it "operates as an adjudication on the merits." Rule 41.02(3), Minnesota Rules of Civil Procedure. *See Erickson v. Nelson*, 275 Minn. 561, 146 N.W.2d 768 (1966). We will reverse an involuntary dismissal under Rule 41.02(1) only when the trial court abused its discretion. *Scherer*, 270 N.W.2d at 24.

Even though dismissal under Rule 41.02(1) is discretionary, we have established specific guidelines to be used by the trial courts. In *Scherer* we held that dismissal for failure to prosecute was appropriate *only when* (1) the delay prejudiced the defendants; *and* (2) the delay was un-

reasonable and inexcusable. *Scherer*, 270 N.W.2d at 24. These stringent standards are justified by the principle that claims should be tried on their merits.

In the instant case, respondents have not demonstrated sufficient prejudice. Furthermore, although the failure to appoint a trustee until the hospital's and physicians' cooperation had been secured is a weak excuse, the construction of Minn.Stat. § 573.02 advanced by appellant is a reasonable one which we have herein adopted. Finally, involuntary dismissal is appropriate when there are considerations of willfulness and contempt for the authority of the court or of the litigation process, considerations which are absent or have not been shown in the instant case. *See Peters v. Waters Instruments, Inc.*, 312 Minn. 152, 251 N.W.2d 114 (1977).

3. In its order and memorandum, the St. Louis County District Court concluded:

> As to Mr. Bonhiver's own derivative claims, he also has failed to process those matters. His claims have always been derivative, whether by reason of the injuries to his wife, or by her later death. In view of the Court's conclusion that the wrongful death action must be dismissed it also is apparent that the derivative claims arising from that demise must also be, * * *.

The respondents also argue that Homer Bonhiver's loss of consortium claims, accruing prior to his wife's death, are derivative claims and therefore upon the dismissal of the main claim, the derivative claims die.

*Peters v. Bodin*, 242 Minn. 489, 65 N.W.2d 917 (1954), involved an action for personal injuries by a woman involved in an automobile accident. The woman's husband also sued for loss of consortium. At trial the jury returned a verdict adverse to

---

visions of the statute of limitations. We commend this change to the careful consideration of the legislature.
215 Minn. at 473, 10 N.W.2d at 393–94 (emphasis added, citations omitted). *See also Decosse*, 319 N.W.2d at 48.

The legislature never responded and presumably as this court observed in *DeCosse* this evinces an intent to set definite time limitations for when a wrongful death action can be brought. *Id.*

the woman but allowed the husband $50 for loss of services. On appeal we wrote that:

> [There is an] established rule that a husband's right to special damages for loss of his wife's services, or for medical and hospital expenses arises out of her injuries [and] is derivative only, so that if she has no valid claim for such injuries, he is likewise without right to recover for such special damages.

242 Minn. at 496, 65 N.W.2d at 922. *See also Schwalich v. Guenther,* 282 Minn. 504, 506–07, 166 N.W.2d 74, 77 (1969). *But see State Farm Mut. Auto. Ins. Co. v. Village of Isle,* 265 Minn. 360, 368–69, 122 N.W.2d 36, 41–42 (1963).

In *State Farm,* this court stated that "[i]t seems clear that loss of consortium cannot fairly be said to constitute an injury to the person, but rather appears to be a consequential item of damage resulting from such a type of injury, and *giving rise to a separate cause of action.*" 265 Minn. at 368, 122 N.W.2d at 42 (emphasis added). *See also* W. Prosser, Handbook of the Law of Torts § 125 at 889 (4th ed. 1971) ("The action of the husband and parent is entirely distinct from that which may be maintained on behalf of the wife or child for the original tort itself. * * * [t]he husband's action *does not abate* upon the death of the wife * * *.")

Although cases like *Peters, Schwalich,* and *Thill v. Modern Erecting Co.,* 284 Minn. 508, 170 N.W.2d 865 (1969), support respondents' contention that damages for loss of consortium are derivative, these cases do not necessarily lead to the conclusion that Homer Bonhiver's claim for loss of consortium abated because Moira Bonhiver's claim for personal injuries died when she did. Both Prosser and *Fowlie v. First Minneapolis Trust Co.,* 184 Minn. 82, 237 N.W. 846 (1931), indicate that a

spouse's cause of action for loss of consortium does not abate upon the death of his/her mate. *See also Mattfeld v. Nester,* 226 Minn. 106, 32 N.W.2d 291 (1948).

In addition, the cases cited by respondents, supporting the argument that Homer Bonhiver's claims for loss of consortium abated, did not involve the death of a spouse. Both *Fowlie* and *Mattfeld,* however, involved the death of a spouse.[8] The *Peters* and *Thill* rationale is that an action for consortium cannot be maintained unless there is a separate tort committed against the other spouse. This rationale is logical and appropriate in the context of personal injury suits, but is unduly harsh in the context of wrongful death actions. *Fowlie* and *Mattfeld* imply that the fact of the spouse's death creates a presumption that there was a separate tort committed against the deceased spouse, and neither case mentioned the derivative nature of loss of consortium claims.

In conclusion, the trial court's dismissal of appellant's consortium claims was erroneous and we therefore reverse and remand this case for trial on the merits.

Reversed and remanded.

KELLEY, J., took no part in the consideration or decision of this case.

---

**8.** The *Fowlie* and *Mattfeld* cases view, somewhat chauvinistically, the husband's action for loss of consortium (as well as expenses of last illness and burial) as property rights. *See, e.g., Mattfeld,* 226 Minn. at 132, 32 N.W.2d at 308. ("The wrong to the husband insofar as it involves such expenses is deemed to be one to his property

* * *.") This characterization of consortium is archaic and stems from the evolution of the cause of action. *See* Prosser, *supra,* at § 124–25. *See also Salin v. Kloempken,* 322 N.W.2d 736, 739 (Minn.1982) (describing loss of consortium as a historical curiosity).