Kenneth **KENSINGER**, as Trustee for Heirs of Darlene Kensinger, Deceased, Appellant,

v.

**N.R. KIPPEN, M.D., Billy G. Brooks, M.D., St. Francis Hospital,** Respondents.

No. CO–86–206.

Court of Appeals of Minnesota.

July 15, 1986.

Review Denied Sept. 22, 1986.

Michael R. Lochow, Fargo, N.D., for appellant.

Steven L. Marquart, Cahill, Jeffries & Maring, Moorhead, for respondent N.R. Kippen.

John D. Kelly, Pamela J. Hermes, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D., Fred Strege, Smith & Strege, Wahpeton, N.D., for respondent Billy G. Brooks.

Jeffrey R. Hannig, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for respondent St. Francis Hosp.

Heard, considered and decided by NIER-ENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Kenneth Kensinger, as trustee for the heirs of Darlene Kensinger, appeals the trial court's grant of summary judgment to the defendants in this medical malpractice action. He contends that when a wrongful death action is based on medical malpractice, the cause of action accrues on the date of the decedent's death rather than the date of last treatment, as the trial court ruled. We affirm.

## FACTS

On August 10, 1981, Darlene Kensinger was admitted to St. Francis Hospital in Breckenridge, Minnesota. Her physician, N.R. Kippen, M.D., performed surgery to remove an ovarian cyst. A pathologist, Dr. Billy Brooks, examined tissue specimens and reported the cyst was benign.

Darlene Kensinger saw Dr. Kippen periodically after the surgery. In the summer of 1982 she complained of pelvic pain. Further tests performed on July 22, 1982, at St. Francis Hospital showed she had an ovarian tumor. Dr. Kippen referred her to an oncologist in Fargo, North Dakota, where she was treated until her death on February 4, 1983, of recurrent ovarian cancer.

Dr. Brooks' last treatment of Darlene Kensinger occurred on August 10, 1981; he was served with a summons and complaint on February 5, 1985. Dr. Kippen and St. Francis Hospital treated her last on July 22, 1982; they were served on February 4, 1985.

The trial court ruled that wrongful death actions based on medical malpractice have a two-year limitations period which begins to run when treatment terminates. In this case treatment terminated on August 10, 1981, with respect to Dr. Brooks and on July 22, 1982, with respect to Dr. Kippen and St. Francis Hospital. Because this action was not commenced within two years of these dates, the trial court granted summary judgment to all defendants.

## ISSUES

1. When does a cause of action accrue for wrongful death based on medical malpractice?

2. Does Minn.Stat. § 573.02 violate the due process and equal protection clauses of the United States and Minnesota Constitutions or art. 1, § 8, of the Minnesota Constitution?

## ANALYSIS

### I

■ Wrongful death actions are authorized by Minn.Stat. § 573.02, subd. 1, which provides:

When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed * * * may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by the wrongful act or omission. *An action to recover damages for a death caused by the alleged professional negligence of a*

*physician, surgeon, dentist, hospital or sanatorium * * * shall be commenced within the time set forth in section 541.-07, subd. 1. * * ** Any other action under this section may be commenced within three years after the date of death provided that the action must be commenced within six years after the act or omission. * * *

If an action for the injury was commenced by the decedent and not finally determined during his life, it may be continued by the trustee for recovery of damages for the exclusive benefit of the surviving spouse and next of kin * * *.

(Emphasis added).

Minn.Stat. § 541.07(1) provides a two-year limitations period for medical malpractice actions, but does not state when the cause of action accrues. The supreme court has held that a cause of action for medical malpractice accrues when treatment ceases. *See Schmit v. Esser,* 183 Minn. 354, 358, 236 N.W. 622, 624–25 (1931); *Grondahl v. Bulluck,* 318 N.W.2d 240, 242–43 (Minn.1982). Thus, the issue is whether the reference to "the time set forth in section 541.07, subd. 1" in the wrongful death act incorporates both the case law on the time of accrual and the two-year limitations period.

Kensinger argues that the wrongful death act creates a cause of action for the benefit of survivors, *see Shumway v. Nelson,* 259 Minn. 319, 107 N.W.2d 531 (1961), that he could not bring suit until Darlene Kensinger died, and that therefore the cause of action accrued on her death. *See, e.g., Bonhiver v. Graff,* 311 Minn. 111, 117, 248 N.W.2d 291, 296 (1976) (an action accrues "at such time as it could be brought in a court of law without dismissal for failure to state a claim"). He contends that the trial court's interpretation of the wrongful death act would preclude an action if the patient died more than two years from the date of last treatment but failed to bring suit within the limitations period for medical malpractice.[1]

We agree that this application of the statute would be harsh, but conclude that the trial court properly construed the statute in light of the legislative intent to bar some wrongful death actions before they accrue in the interest of preventing litigation of stale claims.

Before amendment of the wrongful death statute in 1978, the limitations period was three years from the wrongful act or omission. *See* Minn.Stat. § 573.02, subd. 1 (1976), amended by 1978 Minn.Laws ch. 593, § 1. Thus, before 1978 the legislature clearly contemplated that a wrongful death cause of action, whether or not based on malpractice, could expire before the decedent's death. As amended, actions other than those involving medical malpractice may be brought within three years of the date of death but must be brought within six years of the act or omission. Consequently, the act as amended presents the same possibility of time-barring some wrongful death actions. In *DeCosse v. Armstrong Cork,* 319 N.W.2d 45 (Minn. 1982), the supreme court said:

Time-barring a wrongful death action before death triggers accrual of the right to bring the action has been criticized as illogical and unjust. * * * Despite any injustice or illogic to such an approach, the plain meaning of the statute seems to be clear. By the 1978 amendment the legislature is expressing its intention to bar actions for some deaths caused by wrongful acts or omissions even if they are brought on the day of death.

*Id.,* 319 N.W.2d at 48.

The act expressly subjects wrongful death actions to the limitations period underlying the wrongful act. The first sentence of § 573.02, subd. 1, provides that a wrongful death action may be brought "if the decedent might have maintained an ac-

---

1. In this case, however, that did not happen. Darlene Kensinger died on February 4, 1983. Under the trial court's construction of the statute, Kenneth Kensinger had six months to bring an action against Dr. Brooks (whose last treatment was August 10, 1981) and almost one and one-half years to bring an action against the other defendants (last treatment date July 22, 1982) before the statute of limitations expired.

tion, *had he lived"* (emphasis added). Indeed, the six-year limitations period for negligence is specifically incorporated by the statute. ("Any other action * * * must be commenced within six years after the act or omission"); *see* Minn.Stat. § 541.-05(5) (1984). Interpreting the statute to require incorporation of the underlying medical malpractice limitations period is consistent with these provisions. Otherwise, survivors bringing a wrongful death action would have a longer limitations period than the decedent would have had if the decedent had lived.

When general principles of statutory construction are applied, we reach the same result. The wrongful death act provides that an action to recover damages for deaths caused by medical malpractice "shall be commenced within the time set forth in section 541.07, subdivision 1." Judicial construction of a statute, so long as it is unreversed, is as much a part of the statute as if it had been written into it originally. *Roos v. City of Mankato*, 199 Minn. 284, 288, 271 N.W. 582, 584 (1937). We must presume the legislature knew of the court's construction of § 541.07(1), *see People for Environmental Enlightenment and Responsibility (PEER), Inc. v. Minnesota Environmental Quality Council*, 266 N.W.2d 858, 866 (Minn.1978), and we must assume the legislature approved of it because the legislature has not amended § 541.07(1) in a manner inconsistent with the judicial construction, *see Novak v. Kirby*, 287 N.W.2d 621, 623 (1979). If the legislature had a different intent, the wrongful death act could have been worded to say specifically that wrongful death actions based on medical malpractice must be commenced within two years of the date of death.

The wrongful death act further differentiates medical malpractice claims by stating, "[a]ny *other* action under this section may be commenced within three years after the date of death" (emphasis added). The specific language excluding actions based on malpractice from the three-year limitations period governs, rather than the more general language referring to "oth-

er" actions. *See* Minn.Stat. § 645.26, subd. 1 (1984).

Furthermore, the wrongful death statute specifically provides for conversion of a patient's malpractice action into a wrongful death action. *See* § 573.02, subd. 1. If Darlene Kensinger had brought a malpractice action before her death, Kenneth Kensinger could have converted it to a wrongful death action upon motion to the trial court. This provision undermines the force of his argument that he had no right to bring an action before Darlene Kensinger's death.

Finally, this interpretation of the wrongful death statute is consistent with the legislature's policy decision to have a shorter limitations period for malpractice cases. The state's choice of the termination of treatment as the event that triggers the running of the statute is consistent with its interest in preventing litigation of stale claims. *See Jewson v. Mayo Clinic*, 691 F.2d 405, 411 (8th Cir.1982). We hold that a cause of action for wrongful death based on medical malpractice accrues on the date of last treatment.

## II

█ Kensinger contends the wrongful death statute denies him equal protection and due process of law because it creates a class of individuals whose claim for damages expires before it accrues. He also claims it violates Minn. Const. art. I, § 8, which guarantees to every person "a certain remedy in the laws for all injuries or wrongs." As we pointed out above, Kensinger is not a member of this class because he could have brought a timely wrongful death action after Darlene Kensinger's death. In addition, Kensinger did not notify the attorney general that he was contesting the constitutionality of the statute. *See* Minn.R.Civ.App.P. 144; *Underhill v. Knox*, 355 N.W.2d 742, 746 (Minn.Ct. App.1984) (refusing to consider the constitutionality of § 541.07(1) for failure to serve notice on the attorney general). Service of the notice of appeal on the attorney

general is jurisdictional. *See Oak Center Creamery Co. v. Grobe,* 264 Minn. 435, 438, 119 N.W.2d 729, 731 (1963).

We therefore do not reach these constitutional issues, but note that another court has found meritless the equal protection and due process challenges. *See Jewson v. Mayo Clinic,* 691 F.2d at 411–12.

## DECISION

The trial court correctly construed Minn. Stat. § 573.02, subd. 1, and § 541.07(1), in ruling that a cause of action for wrongful death based on medical malpractice accrues on the date of last treatment. Appellant's cause of action is barred by the statute of limitations.

Affirmed.