In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2355

LEN BOOGAARD and JOANNE BOOGAARD, Personal Representatives of the Estate of DEREK BOOGAARD, Deceased,

*Plaintiffs-Appellants*,

*v.*

NATIONAL HOCKEY LEAGUE, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-04846 — **Gary Feinerman**, *Judge*.

ARGUED JANUARY 11, 2018 — DECIDED MAY 25, 2018

Before EASTERBROOK and BARRETT, *Circuit Judges*, and
STADTMUELLER, *District Judge*.[*]

BARRETT, *Circuit Judge*. Len and Joanne Boogaard appeal
the dismissal of the wrongful-death action they brought as
the personal representatives of the estate of their son, Derek

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

Boogaard. They devote their appeal almost entirely to arguments that would spark excitement—or fear—in the heart of a civil procedure student. There is a *Hanna v. Plumer* problem—whether Federal Rule of Civil Procedure 17(b)(3) controls the Boogaards' ability to bring this suit. 380 U.S. 460 (1965). There is an *Erie Railroad Co. v. Tompkins* question—whether federal or state law applies if Rule 17(b)(3) does not control. 304 U.S. 64 (1938). There is a choice-of-law problem—whether Illinois, Minnesota, or New York law applies if this is a matter of state law. And there is even a relation-back issue—whether, if Minnesota law applies, Federal Rule of Civil Procedure 17(a)(3)'s relation-back provision can save the Boogaards from an error that it is otherwise too late to correct.

At the end of the day, however, it is an argument to which the Boogaards give short shrift that disposes of their case: forfeiture. For the reasons that follow, we agree with the district court that by failing to respond to the National Hockey League's argument that their complaint fails to state a claim, the Boogaards forfeited any argument that it does. Their suit thus fails regardless of whether they can run the procedural gantlet of showing that they are the proper parties to bring it.

## I.

Because we are reviewing a dismissal under Rule 12(b)(6), we treat the allegations contained in the Boogaards' complaint as true. That does not mean, however, that we vouch for their accuracy. It means only that at this stage of the case, the Boogaards are entitled to have every factual inference drawn in their favor. In what follows, then, we re-

count the facts as the Boogaards tell them in the complaint they filed against the National Hockey League.

Derek Boogaard ("Derek") was a professional hockey player with the National Hockey League ("NHL").[1] He joined the NHL in 2005 as a member of the Minnesota Wild, where he remained until the summer of 2010. During his time with the Wild, team doctors repeatedly prescribed Derek with pain pills relating to various injuries and procedures. He became addicted to those pills by 2009.

In September of that year, the NHL placed Derek into its Substance Abuse and Behavioral Health Program. The Program is the product of a 1996 agreement (which we'll call the "substance abuse agreement") between the NHL and its players' union to create a comprehensive system for addressing substance abuse among NHL players. When a player enters the Program, he is initially permitted to receive his full NHL salary without penalty so long as he complies with the Program. If the player violates the Program's rules, however, he receives penalties of increasing severity.

Pursuant to the Program, Derek was checked into a California rehabilitation facility for in-patient treatment of his opioid and sleeping-pill addictions. Upon leaving that facility, he was subject to the NHL's mandatory "Aftercare Program," which required him to refrain from using opioids and Ambien and to submit to random drug testing. The NHL told Derek that his failure to follow the Aftercare Program conditions could result in his permanent suspension.

---

[1] We call him "Derek" to distinguish him from his parents, Len and Joanne Boogaard, who represent Derek's estate in this appeal.

Derek signed a contract with the New York Rangers in the summer of 2010. Before long, he began asking trainers for Ambien, leading an NHL doctor to remind him that he could not use Ambien or opioids. But Derek still relapsed. And over the following months, NHL doctors made Derek's situation worse by violating various conditions of the Aftercare Program. They prescribed him Ambien and pain medication. They failed to impose penalties when Derek reported that he had purchased pain medications off the street over Christmas break. They again failed to impose penalties when Derek failed urine tests in January and March. And when Derek was admitted to a recovery center in California to treat opioid dependence, they allowed him to leave the facility without a chaperone. While on one such trip, Derek purchased thousands of dollars of opioids off the street; on another, he overdosed on pills and died.

This litigation began two years later. Its procedural history is complicated, so we will keep it to the highlights. Derek's estate sued the NHL and the other defendants in Illinois state court. The original complaint asserted eight claims, four of which it characterized as arising under Illinois's Wrongful Death Act and another four under Illinois's Survival Act. The complaint alleged that the NHL had failed to prevent the over-prescription of addictive medications to Derek, had breached its voluntarily undertaken duty to monitor and curb Derek's drug addiction in the Program, had been negligent in monitoring Derek for brain trauma during his career, and had negligently permitted team doctors to inject Derek with an intramuscular analgesic called Toradol.

The NHL removed the case to federal court. It argued that federal jurisdiction existed under the doctrine of complete preemption, which applies when the scope of a federal law is so broad that it essentially replaces state-law claims. The district court agreed and denied the estate's motion to remand. It held that at least two of the claims were founded directly on rights created under the parties' collective bargaining agreement—the claims that the NHL had breached its duties under the Program to care for Derek and address his drug addiction—and were therefore preempted by the Labor Management Relations Act. It had supplemental jurisdiction over any remaining state claims.

The NHL then moved to dismiss the whole complaint for preemption and failure to state a claim. At that point, Len and Joanne Boogaard filed a first amended complaint naming themselves as the successor personal representatives of Derek's estate. (Someone else had initially represented it.) The amended complaint invoked Minnesota's wrongful-death and survival statute, although it also kept its references to Illinois law, choosing to characterize the claims as arising under both states' statutes.

The district court deemed the NHL's still-pending motion to dismiss to be directed at the Boogaards' first amended complaint, and the court ordered the NHL to file a supplemental memorandum in support of the motion. The NHL added a new argument for dismissal: Wrongful-death and survival actions can only be brought by a court-appointed trustee under Minnesota law, and the Boogaards were not court-appointed trustees.[2] And since the time during which

---

[2] Minnesota law has a special statutory regime for appointing a trustee to prosecute wrongful-death and survival actions on behalf of the

a Minnesota court could appoint a trustee for Derek's estate had run, this was not a problem that the Boogaards could fix. In response, the Boogaards argued that the law of Illinois, not Minnesota, determined who is entitled to bring this wrongful-death and survival action. The district court did not reach this choice-of-law problem. Instead, it granted summary judgment to the NHL on the ground that all of the Boogaards' claims were preempted.

After summary judgment, the Boogaards moved to file a second amended complaint, which added claims—still under Minnesota and Illinois wrongful-death and survival laws—that the Boogaards said were not preempted. The NHL disputed that contention, but the district court concluded that two of the new counts put forward a "theory of tort—that the NHL unreasonably harmed Boogaard—[that] is viable … and not preempted by the [Labor Management Relations Act]" and the other two "contain the seed of a viable, non-preempted claim … that the NHL actively and unreasonably harmed Boogaard by implicitly communicating that head trauma is not dangerous." It allowed the Boogaards to file the new complaint and told the NHL that it

decedent's living spouse and next of kin. Being appointed as such a trustee is different from being appointed personal representative of the decedent or estate. *Steinlage ex rel. Smith v. Mayo Clinic Rochester*, 435 F.3d 913, 915–17 (8th Cir. 2006); *Ortiz v. Gavenda*, 590 N.W.2d 119, 124 (Minn. 1999) (stating that the appointment of a wrongful-death trustee is an exercise of the principle that "those entitled to recovery as a result of the wrongful death shall be represented by the trustee without compromise"). The Boogaards were appointed as the personal representatives of Derek's estate, but they were never appointed as trustees for wrongful-death and survival actions.

could still move to dismiss the complaint—so long as it did so on grounds other than preemption.

The NHL took the district court's suggestion. It renewed its argument, which the district court had not yet addressed, that the Boogaards' claims could only be brought by a trustee appointed pursuant to Minnesota law. In the alternative, it argued that the new complaint did not state a claim no matter which state's law applied. The Boogaards focused on the NHL's argument about the Minnesota trustee requirement.[3] In addition to the choice-of-law points they had made before, they contended that Federal Rule of Civil Procedure 17(b), which governs the choice-of-law analysis in determining a party's capacity to sue, required the court to apply Illinois law regarding who can bring a wrongful-death or survival action. The Boogaards said nothing in response to the NHL's alternative argument that their allegations, even if true, would not entitle them to relief.

The district court granted the motion to dismiss on both grounds pressed by the NHL. It held that Minnesota law applied to the action and thus required a wrongful-death or survival action to be brought by a court-appointed trustee. In the alternative, it held that the Boogaards had forfeited their claims by failing to respond to the NHL's argument that the complaint failed to state a claim under the law of any state. This appeal followed.

---

[3] They also responded to the NHL's contention that the First Amendment protected it from the Boogaards' claim that the NHL promoted violence. The parties' arguments on that issue are not relevant to this appeal.

## II.

Before we reach the merits, we have some housekeeping to do. Every brief filed by an appellant in our court must contain a "jurisdictional statement" explaining why we have authority to decide the appeal. The Boogaards hedge in theirs. Their jurisdictional statement consists of the observation that the NHL removed the case to federal court on a theory of complete preemption. In other words, rather than assuring us that jurisdiction exists, the Boogaards essentially say "the NHL says that jurisdiction exists." The statement does not endorse (or indeed, even acknowledge) the district court's jurisdictional ruling, presumably because the Boogaards continue to disagree with it. Despite the Boogaards' evident belief that jurisdiction is lacking, their brief goes on to ask us to review the merits of the district court's decision.

This is insufficient. If a party believes that we lack jurisdiction, it has an obligation to say so. We thus ordered the parties to file supplemental briefs on the jurisdictional issue so that we could discharge our obligation to determine whether we have the authority to decide this appeal.

The Boogaards come clean in their supplemental brief. They argue that the Labor Management Relations Act does not completely preempt their state-law claims and that there is thus no basis for federal jurisdiction.[4] The NHL, on the other hand, maintains that the district court got the jurisdictional issue right.

---

[4] Diversity jurisdiction does not exist, because the parties cannot satisfy the complete diversity of citizenship requirement.

The district court did get it right. The doctrine of complete preemption "confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). In this case, § 301(a) of the Labor Management Relations Act "displace[s] entirely any state cause of action" for violation of a collective bargaining agreement. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983). It does not matter that the lawsuit styles itself as something other than a breach-of-contract action. If the suit's claims are "founded directly on rights created by collective-bargaining agreements" or are "substantially dependent on analysis of a collective-bargaining agreement," then § 301 governs those claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citation omitted).

The Boogaards' complaint makes plain that at least two of their initial claims were based on a duty allegedly contained within the substance abuse agreement. It alleges that by administering the Program established by the substance abuse agreement, the NHL assumed the duty to curb, cure, and monitor Derek's drug addiction. And it contends that the NHL breached that duty when it violated the procedures it had agreed to use in administering the Program. For example, the Boogaards allege that NHL doctors provided Derek with prescriptions for pain medication even though the rules of the Program forbade Derek to take any opioids and that the NHL allegedly failed to penalize Derek in accordance with the Program rules when urine tests came back positive for prohibited drugs. The complaint frequently couches its accusations of duty and breach in terms of obli-

gations and violations of the Program, leading unavoidably to the conclusion that the Boogaards' claims rely on applying and interpreting the substance abuse agreement, which dictated the Program's terms.

Now, this only matters for purposes of § 301 of the Labor Management Relations Act if the substance abuse agreement is part of the collective bargaining agreement between the NHL and the NHL Players' Association. The Boogaards say it's not. But the collective bargaining agreement had an integration clause stating that this agreement "and any existing letter agreements between the parties that are not inconsistent with this Agreement" were the "entire understanding between the parties." The substance abuse agreement was an existing letter agreement between the parties, and the Boogaards have pointed to no inconsistency between it and the collective bargaining agreement. Moreover, the collective bargaining agreement states that the Program will still handle certain categories of substance abuse. This reference would not make sense if the parties intended the collective bargaining agreement to supersede the substance abuse agreement.

In sum, the district court correctly concluded that it had subject-matter jurisdiction over the claims asserting that the NHL breached its obligations under the substance abuse agreement. And even if that created federal question jurisdiction over only some of the claims in the complaint, the district court had supplemental jurisdiction over the rest. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article

III … L."). The Boogaards' late-coming jurisdictional challenge therefore fails.

### III.

This appeal presents a curious situation. The Boogaards devote almost their entire brief to attacking the district court's ruling that the Minnesota trustee requirement bars their suit. But that was not the only ground on which the district court dismissed the case—it held in the alternative that the Boogaards had forfeited their claims by failing to respond to the NHL's argument that they failed to state a claim under the law of either Minnesota or Illinois. Thus, even if the Boogaards are right about the trustee requirement, they still lose if the district court's alternative holding stands.

It is hard to fault the Boogaards for lodging a weak challenge to the district court's forfeiture holding, because there are no strong arguments available against it. Their opener is hardly a knockout: they assert that alternative holdings should be disregarded as "mere dictum." That contention is meritless. As an initial matter, it is well settled that we will affirm a district court's judgment if any of several alternative holdings supports it. *See*, *e.g.*, *Maher v. City of Chicago*, 547 F.3d 817, 821 (7th Cir. 2008). More fundamentally, the Boogaards are wrong to characterize alternative holdings as "dictum." The rule is the exact opposite: "It is blackletter law that 'where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.'" BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT 122 (2016) (citations omitted). If alternative holdings have precedential force as a matter of stare decisis, one can hardly argue that they are not independently sufficient grounds on which to affirm the judgment they support.

The Boogaards' second argument is not much better. They do not—and cannot—deny that a district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss. *See, e.g., Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995). They argue, however, that the district court was wrong to do so in this instance. According to the Boogaards, the district court implicitly rejected a Rule 12(b)(6) argument when it permitted them to file an amended complaint adding the new claims. They insist that they were thus justified in believing that the NHL was simply regurgitating an argument that it had already lost.

The record belies that contention. The district court entered summary judgment on the Boogaards' first amended complaint solely on preemption grounds. When the NHL opposed the Boogaards' request to file a second amended complaint, it insisted that amendment would be futile because the proposed second amended complaint likewise contained only preempted claims. That preemption point was the NHL's only futility argument against amendment; it did not argue that the new claims also failed to state a claim under state law. The district court held that § 301 did not preempt the new claims in the proposed complaint and granted the Boogaards' motion for leave to amend. It then invited the NHL to either answer the complaint or move to dismiss it, but the court cautioned that if the defendants chose to move to dismiss any surviving claims, "they should not do so on preemption grounds."

The Boogaards place great emphasis on the district court's use of the word "viable" to describe the new counts

in the second amended complaint. But in context, it is plain that the court was merely communicating its view that these counts could survive the only challenge then lodged against them: the NHL's argument that they were preempted. The question whether the Boogaards' allegations, if true, would entitle them to relief under state law was not before the court. And lest there be any doubt about the breadth of the court's ruling, its express instruction that the NHL could move to dismiss on non-preemption grounds makes it even clearer that the court was not purporting to anticipatorily resolve other grounds for dismissal.

If the Boogaards misunderstood the district court, the NHL's motion to dismiss under Rule 12(b)(6) should have been a wake-up call. When the NHL moved to dismiss on grounds the Boogaards claim to believe were impliedly fore-closed, the prudent course was to clarify matters with the district court or respond to those arguments anyway. By re-maining silent, the Boogaards took the risk that the district court would hold their claims forfeited. The court acted well within its authority when it did.

We will not entertain the Boogaards' alternative request that we remand to allow them to file an amended complaint. Their complaint was dismissed in the alternative for forfei-ture, and amending the underlying complaint does not cure their forfeiture. Furthermore, the Boogaards have not ex-plained in any detail what amendments they would make, which is itself reason to deny the request. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808–09 (7th Cir. 2015). The judgment of the district court is AFFIRMED.